Nov. Term, 1851.

McKinney v. Springer.

---

## McKinney v. Springer.

To a declaration upon the common counts for work and labor, the defendant pleaded as follows: 1. That the causes of action did not accrue within five years, &c. 2. That the defendant did not, at any time within five years, &c., undertake and promise, in manner and form, &c. *Held*, that the pleas were identical.

The proviso in the 11th section of the act of 1838 regulating the practice in suits at law, which enacts that, if in any of the actions or suits enumerated in that section, judgment be given for the plaintiff and afterwards reversed for error, a new action may be commenced within a year after such reversal, applies to suits in chancery as well as to actions at law.

Nov. Term,
1851.

McKinney
v.
Springer.

A party who has applied to chancery for relief and obtained a decree, when his remedy was exclusively at law, may, under said proviso, at any time within a year after the reversal of such decree for error, prosecute his action, for the same matter, at law.

Where one has entered into a special agreement to perform work for another, and furnish materials, and has done work and furnished materials, but not in the manner stipulated by the contract; or where he has voluntarily abandoned the work before its completion; yet if the work done and the materials furnished are accepted and used by the other party, the latter is answerable to the amount whereby he is benefited, upon an implied promise to pay for the value he has received.

But such amount cannot exceed the price which would have been allowed, under the contract, for the same amount of work, or quantity of materials, had the contract been fulfilled.

The mode of ascertaining the real benefit received from the part performance of work, in cases like the present, is to estimate the whole work at the price fixed by the contract, and to deduct from that the amount requisite to complete the part of the work left unfinished. If any loss is occasioned by the unfinished part costing more in proportion than the whole was undertaken for, the loss must be borne by the party who originally contracted to do the whole. The amount to be allowed may, in some cases, be less than the proportion which the work done would bear to the cost of the whole, but cannot exceed it.

It seems that the defendant may, in an action of this kind, reduce the amount to be recovered by showing that he sustained special damage by reason of the non-performance of the contract by the plaintiff, or he may waive the recoupment of such damages and bring a cross action to recover them.

Where an entire job of work was to be done under a special contract, and the compensation was to be, on its completion, the conveyance of a lot of ground, and the workman, having done a part of the work, abandoned the contract, but the party for whom the work was done received and retained the benefit thereof, it was *held,* that the value of the lot was to be considered as representing the compensation the workman was to receive, and from it should be deducted the amount necessary to make up the deficiencies of the other party in the completion of the contract.

Where a building is in process of construction under a special contract, and additions or alterations are made, the original contract, unless it has been so entirely abandoned that it is impossible to trace it and to say to what part of the work it is applicable, is held still to exist, and to be binding on the parties as far as it can be followed.

Interest is allowable, under the statute, for a vexatious delay of payment for work.

Where work is done and materials furnished in continuation of an entire job, if one of several items is within the period of the statute of limitations, the statute does not bar the recovery upon any.

Wednesday,
November 26.

APPEAL from the *Decatur* Circuit Court.

Smith, J.—Assumpsit by *Springer* against *McKinney* for

work and labor. The first count alleges that on the 16th
of *May*, 1840, the defendant was indebted to the plaintiff
2,200 dollars for building a certain house, and being so
indebted, the defendant promised to pay the plaintiff that
sum, &c. The second and third counts allege an indebt-
edness for so much as the building of the said house was
reasonably worth.

The defendant filed the following pleas:

1st. The general issue.

2d. That said causes of action did not accrue within
six years.

3d. That the defendant did not, at any time within six
years, undertake and promise in manner and form, &c.

4th. That the defendant did not, at any time within five
years, undertake, &c.

The fifth plea was rejected and is not upon the record.

6th. That the Revised Statutes of 1843, were received
by the clerk of the *Decatur* Circuit Court on the 6th of
*March*, 1844, and a record was made of such reception;
and that the defendant did not, within five years next be-
fore said 6th day of *March*, nor at any time within five
years before the commencement of the suit, undertake, &c.

7th. The seventh plea is exactly similar to the sixth,
except that it alleges the causes of action *did not accrue*
within five years before said 6th day of *March*, nor within
five years before the commencement of the suit.

There are also two pleas of set-off, but as no evidence
was given under them they need not be noticed.

The fourth plea was adjudged bad on demurrer, and
the seventh plea was rejected, on the motion of the plain-
tiff, upon the ground that it is substantially similar to the
sixth.

Upon a former trial, a demurrer had been sustained to
the sixth plea, and, for that reason, the judgment was re-
versed by this Court. See case between the same parties,
8 Blackf. 506. The plaintiff, after the cause had been
remanded, obtained leave to withdraw the demurrer and
file the following replication:

That in *May*, 1840, the plaintiff commenced a suit in

chancery for the same causes of action, and obtained a judgment in the Circuit Court, which judgment was reversed by the Supreme Court, for error, on the 21st of *February*, 1844, and his bill was dismissed without prejudice; and that said suit in chancery was commenced within five years after the promise, and the present suit was commenced within one year after said decree was reversed.

This replication was demurred to, but the demurrer was overruled; and the plaintiff having taken issue on the first plea, and traversed the other pleas before noticed, the cause was submitted to a jury upon the issues remaining undisposed of, and the plaintiff obtained a verdict and judgment for 2,200 dollars damages.

The first error assigned is, that the rejection of the seventh plea was erroneous. The appellant contends that the sixth and seventh pleas are essentially different, as under the one the statute of limitations would begin to run at the time of the promise, and under the other at the time the cause of action accrued. In the present case, the promises laid in the declaration are all implied, and as no implied promise could arise until the cause of action accrued, the two pleas must be regarded as identically the same, at least for the purposes of this suit. Whenever there was an indebtedness such as is averred in the declaration, there was a cause of action, and at the same time the promise to pay was implied from the indebtedness. Whether there are any cases in which the statute begins to run before payment is due, we need not now stop to inquire. The general rule is, that the statute does not begin to run at the time of the making of a contract or promise, but from the time the plaintiff might have brought his action, if he was not, at that time, subject to any of the specified disabilities. Chit. on Con. 708, 8 Am. Ed.

The appellant also contends that the Court erred in overruling the demurrer to the replication to the sixth plea. The statute of limitations relied on in that plea, is that contained in the 12th section of the act regulating

the practice in suits at law, in the Revised Code of 1838, p. 447. By that section, all actions of debt on simple contract, for rent arrear, actions on the case (other than for slander), actions of account, trespass, trespass *quare clausum fregit*, detinue, and replevin, were required to be commenced within five years, and after enumerating the actions to be commenced within shorter periods, there is a proviso that if, in any of the said actions or suits, judgment be given for the plaintiff and afterwards reversed for error, a new action may be commenced within a year after such reversal. It is urged that this proviso refers to actions at law only, and, it is true, actions or suits in chancery are not expressly named, but we think they are within the spirit and intention of the statute. It is also said that the cause of action relied on in this suit, could not have been a proper subject of chancery jurisdiction, and that the actions referred to in the proviso, should be interpreted to mean actions whereof the Courts in which they were brought had competent jurisdiction. To give it this construction would greatly cripple the effect of the proviso, and would defeat, in a great measure, the object the legislature seems to have had in view, namely, if the plaintiff had made an effort to recover his debt by commencing an action within the limited time, but, owing to some error in the mode or form of bringing his suit, or in the proceedings, a proper judgment could not be rendered, and while he was prosecuting such an erroneous action the statute of limitations had run out—to give him sufficient additional time to commence a new suit. In a large majority of the cases where a new suit would be necessary, it would be because of a want of jurisdiction of the first action. Most other errors would be rectified by new trials. We think, therefore, the meaning of the proviso ought not to be so limited.

Upon the trial, the plaintiff, to sustain the issues on his part, proved that he had done certain work in the building of a house for the defendant, and then called several witnesses to prove the value of the work so done according to the customary prices.

The defendant then proved that the work was commenced under a special contract in writing, by which the plaintiff agreed to build a house of the specified dimensions, &c., and to complete the same on the 1st day of *August*, 1838; and the defendant, in consideration therefor, was to convey to the plaintiff a certain house and lot in the town of *Greensburgh*.

The house was not finished on the day specified, and there was evidence tending to prove that the plaintiff continued to work upon it, with the knowledge of, and without objection by, the defendant, until some time in the year 1839, when the work was abandoned and the defendant took possession of the house, which was still incomplete.

It also appeared that, during the progress of the work, some alterations of the original plan and specifications were made by the agreement of the parties; and there was some evidence that a portion of the work done was defective and not executed in a workman-like manner.

The Court gave several instructions to the jury, some of which were to the following effect:

That if the work upon the building in question was undertaken by the plaintiff under the written contract given in evidence, and the plaintiff failed to complete the house according to the terms and at the time specified, and the plaintiff abandoned the work while in an unfinished state, without the fault of the defendant, and without his requiring the plaintiff to quit, they should find for the defendant; but if, after the time specified in the contract for its completion, the defendant suffered the plaintiff to proceed with the work, and then, before its completion, required the plaintiff to quit, the plaintiff should recover the reasonable value of the work done and materials furnished, if the defendant has had the use and benefit of them.

That if, after making the written contract, the defendant agreed, by parol, to alterations in the plan of the building, or of the terms of the agreement in any matter, and the plaintiff finished the work according to the altera-

tions or change in the contract, though he could not recover on the written contract, he could recover the value of the work.

That, if the jury find for the plaintiff, the measure of damages should be the reasonable value of the work and materials—provided that does not exceed the amount he would have received for the same amount of work if the contract had been finished according to its terms.

That if they should find for the plaintiff, and believe, from the evidence, that payment has been vexatiously and unreasonably delayed by the defendant, they might give interest to the plaintiff for such delay of payment.

That if the items of work and materials for which the suit was brought, were done and furnished in continuation of one and the same job, and some portion of such labor and materials was done or furnished in *July*, 1839, or at any other period within six years before the commencement of the suit, they may find for the plaintiff for all the items proved, although some of them may have been done or furnished before that time.

There are several errors in these instructions, which we must proceed to notice.

It is a well established principle, that where one has entered into a special agreement to perform work for another and furnish materials, and work is done and materials furnished, but not in the manner stipulated in the contract, yet, if they are accepted and used by the other party, he is answerable to the amount whereby he is benefited, on an implied promise to pay for the value he has received, though no action can be maintained on the special contract. The doctrine is stated in general terms in *Lomax* v. *Baily*, 7 Blackf. 603, though that was an action of covenant on the special agreement, and the plaintiff failed. See also, *Hollingshead* v. *Matchee*, 13 Wend. 276; *Van Deusen* v. *Blum*, 18 Pick. 229; *Adams* v. *Hill*, 16 Maine R. 215.

In this case, therefore, if the defendant had the benefit of certain labor and materials of the plaintiff, the latter was entitled to recover a compensation equal to the bene-

fit the defendant had so received; and his right to recover did not depend upon the question whether the work was finally abandoned at the requirement of the defendant or not, as is assumed in the instructions.

The plaintiff was clearly in default in not having completed his contract in the time and manner specified, and, therefore, he does not bring his action on the agreement, but relies on a general count for work and labor. The defendant cannot say, in defense, that he rescinded the contract in consequence of the default of the plaintiff, inasmuch as he has received some benefit from the plaintiff's part performance; and whether the plaintiff finally abandoned the work voluntarily or not is immaterial; but the defendant may show the agreement, to limit the damages; and the value of the work done and materials furnished is to be estimated, in such cases, according to the actual benefit received by the defendant from such part performance, in obtaining the completion of the work stipulated to be done. The plaintiff, having contracted to furnish the work in a finished state, is not entitled to have the value of his services estimated according to the customary prices paid under other circumstances, for that would not be a fair criterion of their value to the defendant.

In the case of *Koon* v. *Greenman*, 7 Wend. 121, the plaintiff agreed to do certain mason-work in the building of a dwelling-house, the materials to be furnished by the defendant, and the work to be completed by the 1st of *August*, 1828, for which the defendant was to pay a stipulated price. The plaintiff commenced the work, but was delayed by the neglect of the defendant to furnish materials, and, in the month of *October*, having performed part of the work, he quit, refused to finish it, and brought suit. On the trial, the plaintiff called witnesses to prove the value of the work done, and their evidence was admitted in the Court below, but the judgment was, for that reason, reversed; the Supreme Court holding, that so far as the work was done under a special contract, the prices stipulated in it afforded the best evidence of the value of the work, and that, unless it appeared that the work was ren-

dered more expensive to the plaintiff by the improper
interference of the defendant, the contract prices were
conclusive between the parties.

In *Ladue* v. *Semour*, 24 Wend. 60, an action was brought
to recover payment for tanning 500 hides. The work had
not been completed within the time specified in a written
contract. *Bronson*, C. J., said, the question was not what
the work and materials cost the plaintiff, or how much,
under other circumstances, he ought to have—he could
not be entitled, in any event, to more than the contract
price, and from this must be deducted all the defendant
had lost by the want of a strict performance of the agree-
ment.

So, in the case of *Vanderbilt* v. *The Eagle Iron Works*,
25 Wend. 665, it was held that where work to be done in
a particular manner was accepted and reduced to use,
though it was not done in the manner stipulated, the party
for whom it was done was liable in an action for the value,
but could claim a deduction for the part left unperformed.

*Brewer* v. *The Inhabitants of Tyringham*, 12 Pick. 547,
is another case to the same effect. The action was on a
*quantum meruit* for building a bridge. The plaintiff had
performed part of the work, pursuant to a contract, and
left the rest unfinished. The defendants finished the
work, and the plaintiff recovered the price agreed upon,
after deducting the expenses incurred by the defendants
in completing it.

Mr. *Chitty* states the measure of damages in such cases
to be " the stipulated price, less the sum which it would
take to complete the work according to the agreement."
Chit. on Con. 493, 8th Am. Ed.

In the last clause of the first instruction above quoted,
the jury are told that, if the defendant had the benefit of
the plaintiff's work and materials, the latter should reco-
ver their reasonable value. This instruction, as applied
to the circumstances of this case, is erroneous; and the
error is not fully remedied by the instruction relative to
the measure of damages, which limits such reasonable
value to the am unt the plaintiff would have received for

the same quantity of work, if he had completed his contract. The jury would understand, from these instructions, in applying them to the evidence given, that the " reasonable value" they were to put upon the plaintiff's labor and materials, was, not their reasonable value to the defendant, under the particular circumstances of the case, but their reasonable value, to be estimated according to the customary prices charged by other workmen. By the rule thus given, if a man contracts with another to build a house for a certain price, and leaves the house only half finished, he would be entitled to recover half the stipulated price, when that did not exceed the customary rates, if the owner took possession of the unfinished building, which, in most cases, he could not well avoid doing. It would give the builder a very unfair advantage, for he could stop when he pleased, and compel the owner of the property to pay him a full price for what work he had done, whatever losses might have been sustained by his failure to complete his undertaking. In such cases, the owner of the property contracts to pay a gross sum for a house when complete, not a ratable proportion of that sum for so much of the building as should be erected; and if, through the default of the builder, he obtains only an unfinished house, the proper mode of ascertaining the real benefit received by him, from such part performance, is to estimate the whole work at the price the parties had agreed upon, and deduct from that the amount necessary to complete the portions of the work left unfinished. If there is any loss occasioned by such unfinished work costing more in proportion than the whole work was undertaken for, such loss is the consequence of the default of the party who originally contracted to do it, and upon him it ought to fall. There may be cases in which the builder would not be entitled to recover so much as the proportion which the work done would bear to the cost of the whole, but he ought not to recover more than that proportion.

It seems that the defendant may, in an action of this kind, reduce the amount to be recovered, by showing that

he has sustained special damages by reason of the non-performance of the contract by the plaintiff, or, he may waive the recoupment of such damages, and bring a cross action to recover them. *Epperly* v. *Bailey*, at this term.

In the present case, the plaintiff was to be compensated for building the house in question, by receiving the conveyance of a lot of ground; but this fact will not occasion any difficulty in the application of the proper measure of damages. If the plaintiff had finished his contract and brought an action on the special agreement, the measure of damages would have been the value of the lot he was to have received, not the reasonable or customary value of the work done. *Ellison* v. *Dove*, 8 Blackf. 571.—*Lucas* v. *Heaton*, Ind. R. 184 (1). So, in this suit, the value of the lot must be considered as representing the compensation the plaintiff was to receive for the whole work, and from it must be deducted the amount necessary to make up the plaintiff's deficiencies in the completion of his contract.

The instruction relative to the effect of the alterations in the plan of the building, made by the parties during the progress of the work, is also erroneous. When a building is in process of construction, and additions or alterations are made, the original contract, unless it be so entirely abandoned that it is impossible to trace it and say to what part of the work it shall be applied, is held still to exist, and to be binding on the parties as far as it can be followed. The additions, or alterations, if the expense of the work is thereby increased, may be the subjects of a new contract, either express or implied, but they do not affect the original contract, which still remains in force. Chit. on Con. 492.—*Lovelock* v. *King*, 1 Moo. & Rob. 60.—*Wright* v. *Wright*, 1 Litt. 181.—*McCormick* v. *Connelly*, 2 Bay, 401. In this case, the evidence shows that the alterations were not of such a character as materially to interfere with the specifications of the original contract.

The instruction to the jury, that they might give interest for a vexatious delay of payment, is in conformity

with a statutory provision, and is not objectionable. R. S. c. 31, s. 28, p. 581.

The last instruction to be noticed is that having reference to the statute of limitations. So far as it may be understood to mean that the statute would not begin to run until after the plaintiff had ceased to work upon the house in question, this instruction is correct; a contract to build a house, being in law an entire contract to do the thing stipulated, and not a contract for each separate item of work or materials done or furnished in the progress of the undertaking. So far as it favors the idea that the plaintiff is entitled to recover for those items of work and materials, what he had proved them to have been worth according to the customary prices paid at the time for similar work and materials, it is, like the other instructions before noticed, erroneous (2).

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*A. Davison*, for the appellant.

*J. Robinson* and *J. S. Scobey*, for the appellee.

(1) 1 Carter's Ind. R. 264.

(2) The doctrine stated in the present case, in relation to the right to recover damages upon the part performance of a special contract, is in conflict with that asserted in *Swift* v. *Williams*, 2 Carter's Ind. R. 365, and *Hoagland* v. *Moore*, 2 Blackf. 167; and those cases may be deemed, as to that doctrine, to be overruled. See, also, *Cranmer* v. *Graham*, 1 Blackf. 406, where the doctrine stated in the two last-named cases seems also to have been held.