THEODORE E. DAVIS *vs.* COMMONWEALTH.

Suffolk.     March 20, 1895. — September 6, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Constitutionality of Resolve — Validity of Contract — Employment by State of Agent to prosecute Claim against United States — Statute — Waiver — Obligation of State to perform.*

It is within the constitutional power of the Legislature to pass a resolve authorizing the Governor and Council "to employ the agent of the Commonwealth for the prosecution of war claims against the United States to prosecute also the claim of the Commonwealth for a refund of the direct tax paid under act of Congress" of August 5, 1861, "also to fix his compensation, which shall be paid out of any amount received therefrom."

A contract made by the Commonwealth, under the authority of a legislative resolve to employ a person who is the agent of the Commonwealth for the prosecution of war claims against the United States to prosecute also the claim of the Commonwealth for a refund of the direct tax paid under an act of Congress, and whose compensation is to be paid out of any amount so collected by him, cannot be declared void as against public policy.

The Commonwealth, under the authority of a legislative resolve, employed A., who was the agent of the Commonwealth for the prosecution of war claims against the United States, to prosecute also the claim of the Commonwealth for a refund of the direct tax paid under an act of Congress, and fixed his compensation, which was to be paid out of any amount received therefrom.   A. rendered services in procuring the passage of an act of Congress, which appropriated a sum for the refund of the tax, and provided, among other things, that no part of the money so appropriated should be paid out to any agent under any contract for services existing or previously made between any State and agent.   A. also rendered further services in preparing the form of a resolve to be passed, in accordance with the requirements of the act, accepting the sum appropriated, and also the form for obtaining payment of the money.   The Commonwealth, under a resolve duly passed, accepted the money, and also all trusts imposed by the act.   *Held,* that A., in procuring the passage of the statute and in assenting to the Commonwealth's receiving the money under it, did not waive his claim for compensation ; and that the Commonwealth was bound to pay the amount of the compensation agreed upon from any appropriation that might be made for the purpose.

FIELD, C. J.    This is a petition against the Commonwealth under Pub. Sts. c. 195, as amended by St. 1887, c. 246.    The Commonwealth demurred to the petition ; the Superior Court overruled the demurrer and ordered judgment for the petitioner ; and the Commonwealth appealed to this court.    The order of

the Governor and Council, passed February 5, 1890, seems to us within the authority granted by the resolve of March 20, 1888, c. 39, and we have no doubt that the Legislature had the constitutional power to pass the resolve.* We cannot declare the contract made with the petitioner by the Governor and Council void as against public policy, because the Legislature has sanctioned it. Whether a similar contract between private individuals, in which the compensation to be paid is made contingent upon success, would be deemed at common law void as against good morals and public policy, we need not consider. The Legislature can determine for itself what public policy requires or permits to be done in the prosecution in any form of claims of the Commonwealth against the United States. It is not bound, in fixing the compensation of its agents, to conform to the rules of the common law as interpreted by the courts, or to pass a general law whereby individuals shall be put upon the same footing as the Commonwealth in the prosecution of similar claims.

The more difficult question in the case is whether the obligation of the Commonwealth to the petitioner is affected by the act of Congress of March 2, 1891, and by the acceptance of the money by the Commonwealth from the United States under the resolve of April 8, 1891, c. 46. By that resolve the Commonwealth accepted in full satisfaction of all claims against the

---

* The resolve was as follows: " Resolved, That the Governor and Council are hereby authorized to employ the agent of the Commonwealth for the prosecution of war claims against the United States to prosecute also the claim of the Commonwealth for a refund of the direct tax paid under act of Congress, approved August fifth in the year eighteen hundred and sixty-one, and of the interest paid upon war loans during the period from eighteen hundred and sixty-one to eighteen hundred and sixty-five, also to fix his compensation, which shall be paid out of any amount received therefrom."

The order was as follows: " Ordered, That Theodore E. Davis of Washington, D. C., agent of the Commonwealth for the prosecution of war claims against the United States, be and he is hereby authorized to prosecute also the claim of the Commonwealth for a refund of the direct tax paid under acts of Congress, approved August fifth in the year eighteen hundred and sixty-one, and that his compensation be two (2) per centum of any amount he may collect, which shall be paid out of the proceeds received therefrom and paid into the treasury of the Commonwealth, the same to be in full for compensation and expenses on account of said claim."

United States on account of the collection of the direct tax under the statute of the United States approved August 5, 1861, the money which had been credited to it by the Secretary of the Treasury of the United States, under the provisions of the statute of the United States approved March 2, 1891; and the Commonwealth further accepted all trusts imposed upon it by the provisions of the last named statute. The statute of the United States approved March 2, 1891, appropriated the money necessary to reimburse to each State and Territory the amount of the direct tax collected under the Statute of the United States approved August 5, 1861, and it provided in § 3, that " no money shall be paid to any State or Territory until the legislature thereof shall have accepted by resolution the sum herein appropriated and the trusts imposed in full satisfaction of all claims against the United States on account of the levy and collection of said tax, and shall have authorized the Governor to receive said money for the use and purposes aforesaid."

The trusts imposed by this statute are " that where the sums or any part thereof credited to any State, Territory, or the District of Columbia have been collected by the United States from the citizens or inhabitants thereof, or any other person, either directly or by sale of property, such sums shall be held in trust by such State, Territory, or the District of Columbia for the benefit of those persons or inhabitants from whom they were collected, or their legal representatives." In this Commonwealth the tax was not collected by a levy upon the inhabitants, but was paid by the Commonwealth out of its treasury, and therefore this Commonwealth did not receive the money upon the trust above mentioned. This statute of the United States also provided as follows : " That no part of the money hereby appropriated shall be paid out by the Governor of any State or Territory, or any other person, to any attorney or agent under any contract for services now existing or heretofore made between the representative of any State or Territory and any attorney or agent. All claims under the trust hereby created shall be filed with the Governor of such State or Territory and the Commissioners of the District of Columbia, respectively, within six years next after the passage of this act; and all claims not so filed shall be forever barred and the money attributable thereto shall belong to

such State, Territory, or the District of Columbia, respectively, as the case may be."

We consider the statute to mean that no part of the money received shall be paid out to any agent or attorney under any contract for services made before or existing at the time of the passage of the statute, but we doubt whether this provision can be regarded as a part of the trust created by the statute. We are inclined to think that the Commonwealth, after it received the money, held it as its own absolute property. It may be doubtful whether this provision of the statute last cited was intended to apply to States which had paid the tax out of their treasuries; but if it be construed as including all the States, then the reception of the money by the Commonwealth under the statute may be held to imply a promise on the part of the Commonwealth to the United States that it will not pay out of the money so received any compensation to any agent or attorney under any contract for services made before the passage of the statute. Assuming this to be so, what is the legal effect of such a promise upon the claim of the petitioner against the Commonwealth ? If the petitioner has performed his contract with the Commonwealth, and according to the terms of the contract has become entitled to his compensation, we think that it would be no defence for the Commonwealth that it had promised the United States that it would not pay to him his compensation. It may be conceded that Congress, in appropriating money to be paid out of the treasury of the United States to the States, can impose upon it any trust which it sees fit, and that the States, if they accept the money, are bound to carry these trusts into effect.

The most formidable argument is that, as the original resolve provided that the compensation of the agent to be employed " shall be paid out of any amount received " from the United States, and as the order under which the petitioner was employed provided that " his compensation be two per centum of any amount he may collect, which shall be paid out of the proceeds received therefrom and paid into the treasury of the Commonwealth, the same to be in full for compensation and expenses on account of said claim," the petitioner by assenting to the Commonwealth's receiving the money under the act of Congress,

which in effect provided that no part of the money when received shall be paid to him, has waived his claim for compensation, or is estopped from asserting it.

The petitioner not only alleges that he helped to procure the passage of the act of Congress, but in the eighth paragraph of his petition alleges also the following: " Your petitioner says that very soon after the passage of the said act of Congress of March 2, 1891, to refund the direct tax, the Chief Clerk of the State Auditor's office, under the direction of the then State Auditor, Mr. W. D. T. Trefry, wrote to him at Washington and requested him to prepare the form of a resolve for the Legislature to pass, in accordance with the requirement of said act of Congress, accepting the sum therein appropriated, and also the proper form of a claim to be made upon the Treasury Department of the United States for obtaining the money ; and that both of said forms were prepared by your petitioner and forwarded, and were used by the Commonwealth in obtaining said money," etc.

It is plain from these allegations that it must be considered that the petitioner assented to the Commonwealth's receiving the money on the terms provided in the statute of the United States of March 2, 1891. The promise implied, on the part of the Commonwealth, if one is to be implied from its acceptance of the money under such a statute, may certainly be regarded as importing at least a moral obligation, which it may be the duty of the Commonwealth to keep. Is it to be inferred that the petitioner, in procuring the passage of the statute and in assenting to the Commonwealth's receiving the money under it, intended to waive altogether his claim for compensation ? We think not. Congress in the statute did not undertake to declare void any contracts theretofore made between the representative of any State and an agent or attorney. Congress only provided that the money appropriated should not be used to pay for the services of any such agent or attorney. If the money was to be held in trust by the State for the persons from whom the tax was collected, this was a necessary provision if these persons were to be paid in full out of it; but if the money was not held in trust by the State, but belonged to the State absolutely, it is largely a matter of form whether the obligations of the State

shall be discharged out of the money received from the United States, or out of other funds of the State. We think that due effect can be given to the conduct of the petitioner if we hold that at most it amounted to an assent on his part that he need not be paid out of the money received from the United States, and that the Commonwealth, so far as he is concerned, may keep its promise to the United States.

But the petitioner has in substance performed his part of the contract, and the Commonwealth has fully received the benefit contemplated by such performance, and whether the contract was a provident one or not, the Commonwealth ought in substance to perform its part of the contract, and we see no legal difficulty in its doing so. The principal thing promised is a certain amount of compensation, to be determined in a certain manner; it is a subordinate and separable part of the contract that the compensation shall be paid out of the proceeds, and this last may be waived or modified by the parties without a cancellation or avoidance of the whole contract. We are of opinion that the Commonwealth is bound to pay the amount of the compensation agreed upon from any appropriation that may be made for the purpose. See Pub. Sts. c. 195, § 4. It was agreed by the Attorney General at the argument, that, if the demurrer should be overruled, judgment should be entered against the Commonwealth.

*Judgment accordingly.*

*H. M. Knowlton,* Attorney General, & *J. M. Hallowell,* Second Assistant Attorney General, for the Commonwealth.

*J. D. Long & W. Schofield,* for the petitioner.