(No. 10983.—Decree affirmed.)

THE SILURIAN OIL COMPANY et al. Appellants, *vs.* W. E. NEAL *et al.* Appellees.

*Opinion filed February 21, 1917.*

1. MISTAKE—*equity will not reform a written instrument except upon clear evidence.* A written instrument, such as a lease, is presumed to express the intention of the parties, and to justify a court of equity in reforming the instrument upon the ground of mistake the evidence must be clear and satisfactory.

2. SAME—*alleged mistake must be one of fact and be common to both parties.* To authorize the reformation of a written instrument upon the ground of mistake the alleged mistake must be shown by satisfactory evidence to be one of fact and not of law and to have been common to both parties.

3. ESTOPPEL BY VERDICT—*construction put upon lease in suit at law is binding on same parties in equity.* While a judgment in a suit at law to recover royalties on an oil lease is not *res judicata* in a subsequent suit in equity to reform the lease for mistake, yet the construction put upon the lease in the suit at law is binding upon the same parties in the suit in equity under the principle of estoppel by verdict.

APPEAL from the Circuit Court of Lawrence county; the Hon. J. C. EAGLETON, Judge, presiding.

SYLVESTER GEE, FORDYCE, HOLLIDAY & WHITE, and DEFREES, BUCKINGHAM & EATON, (GEORGE T. BUCKINGHAM, of counsel,) for appellants.

McGAUGHEY & TOHILL, and GEORGE W. LACKEY, for appellees W. E. Neal and Dora Neal.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 8, 1906, W. E. Neal (his wife, Dora Neal, joining with him,) leased a tract of land in Lawrence county to G. T. Braden for the purpose of mining and operating for oil. The rental was provided for by what was called a royalty, as follows: "In consideration of the premises the said party of the second part covenant and agree, first, to deliver to the credit of the first parties, free of cost in the pipe line to which the party of the second part may connect his wells, a part of all oil produced and saved from the leased premises, to be determined as follows: One-eighth when the average daily production of the wells may not exceed ten barrels; one-sixth when such production may exceed ten barrels but not exceed forty barrels; one-fourth when such production may exceed forty barrels; the said average production to be made monthly upon pipe line runs and stock in tanks, and the royalty shall vary and be paid from time to time accordingly." Braden assigned the lease to the Braden Oil Company, which assigned it on February 1, 1908, to W. C. McBride, who assigned it to the Silurian Oil Company. The Braden Oil Company drilled three wells on the land and other wells were drilled, and up to November 1, 1910, the successive lessees delivered oil to Neal on the basis of the aggregate production of oil from all the wells, although during a part of that time the daily average production, using each well as a standard, was less than forty barrels. The lessee then declined to make further payments on that basis and claimed that Neal had been overpaid. On June 19, 1913, Neal brought a suit against the Silurian Oil Company and W. C. McBride in the Federal court for the eastern district of Illinois, claiming a portion of the oil on the basis of the

production of all the wells. To his declaration the defendants filed their pleas of the general issue, payment and accord and satisfaction. The question involved was the construction of the lease, and upon the trial the issues were found in favor of the plaintiff for the full amount claimed, and judgment was rendered accordingly for $36,848.40. The defendants prosecuted an appeal from the judgment to the United States circuit court of appeals, but by reason of deficiencies in the record the judgment was affirmed and the defendants paid it. Afterward, on March 20, 1915, the appellants filed their bill in this case in the circuit court of Lawrence county, alleging that prior to June 8, 1906, which was the date of the lease, W. E. Neal and G. T. Braden entered into an agreement by which the oil to be delivered to Neal was on the basis of the average daily production of each well, and that in reducing their agreement to writing they used the language in the lease by mistake, and they prayed the court to reform the instrument so as to express the real agreement. They also stated the recovery in the Federal court, and prayed that upon the reformation of the instrument Neal be required to account for $16,606.11, with interest, as the difference between the amount recovered in the Federal court and the amount to which he was entitled under the real contract, and that he should also be compelled to account for $26,847.29 paid to him after March 1, 1913, to which it was alleged he was not entitled. The appellees, W. E. Neal, Dora Neal, G. T. Braden and the Braden Oil Company, were made defendants, and G. T. Braden and the Braden Oil Company were defaulted. W. E. Neal and Dora Neal answered, denying the making of any agreement prior to or different from the written lease and denying that any mistake occurred. The evidence was heard by the chancellor, who found the issues for the defendants and dismissed the bill for want of equity.

A court of equity having jurisdiction to relieve against the consequences of a mistake, will afford such relief where

the parties to a contract, after having made an agreement, failed to express such agreement in reducing it to a written form. There is, however, a strong presumption that when parties reduce their agreement to writing it expresses their intention, and to overcome the presumption that the writing is their agreement the evidence must be clear and convincing, and the court will never grant relief except upon the most satisfactory evidence and because of its evident justice and necessity. (*Mills* v. *Lockwood,* 42 Ill. 111.) Three things are necessary to justify the reformation of a written instrument upon the ground of a mistake: First, that the mistake be one of fact and not of law; second, that the mistake be proved by convincing and clear evidence; and third, that the mistake was mutual and common to both parties to the instrument. (*Purvines* v. *Harrison,* 151 Ill. 219.) A reformation can only be had upon clear proof that the alleged mistake was mutual, and the proof must be such as to leave no fair and reasonable doubt upon the mind that the instrument does not embody the final intention of the parties but was executed under a common mistake and expresses what neither of the parties intended. *Sutherland* v. *Sutherland,* 69 Ill. 481; *Seeley* v. *Baldwin,* 185 id. 211.

The evidence in this case does not fulfill either of the conditions upon which reformation could be allowed. There was no evidence of an agreement of the parties concerning the proportion of oil to be delivered different from the written contract. W. E. Neal had been acting for G. T. Braden in securing leases of oil lands in the region where the land in question was situated, and he had secured many leases providing for a royalty of one-eighth of the oil produced. On May 26, 1906, Braden and Neal, with another party, drove out to look over the lands on which leases had been secured. Neal had been offered by the Ohio Oil Company a cash bonus above one-eighth of the oil produced but preferred a graded royalty and preferred to lease to Bra-

den, by whom he had been employed. The only agreement concerning the royalty was this: Braden said: "I want you to lease your land to me; I will do better by you than anyone else; leave it to me and I will treat you right." To this Neal replied that the proposition would be satisfactory to him. This did not constitute any contract or agreement as to the proportion of the oil which Neal was to receive, nor raise any inference that he would have signed any lease sent to him unless he concluded that Braden had treated him right. The parties never saw each other from the meeting on May 26 until long after the lease was executed. It was prepared by Braden and sent to Neal and was read and signed by Neal and his wife.

There was no evidence of any mistake by W. E. Neal, who derived his only knowledge of the terms of the contract by reading it when sent to him, and there was no clear or convincing evidence that there was any mistake or misunderstanding on the part of Braden. In the suit brought in the Federal court the deposition of Braden was taken upon written interrogatories, and he then testified on July 25, 1913, as a witness for the appellants, that if the total production of all the wells exceeded forty barrels per day Neal was to receive one-fourth royalty; if the production went below forty barrels and exceeded ten barrels he was to receive one-sixth; and if the production went below ten barrels per day he would receive one-eighth. In this suit he again testified by deposition on April 25, 1916, that he intended by the term "average daily production of the wells," in the lease, to mean the average daily production of each well. He offered as an explanation of his former deposition that he relied upon two of his assistants in making the answer; but certainly his mental condition in respect to the lease, or what he intended by the use of the words employed in it, was not derived from his assistants or anyone else but himself. That he was very busy at the time the first deposition was taken and he confided in some

277 — 4

other person is not a very satisfactory explanation. His opinion, expressed by the last deposition about ten years after the lease was made, that he intended something different from the provision of the lease, would not justify a reformation of the instrument on the ground that there was a mistake on his part.

The bill alleged that the lease was to be drawn in the ordinary or standard form, by which the royalty was based on the average daily production of a single well as a unit, and that the lease was drawn in that form. The defendants, W. E. Neal and Dora Neal, by their answer alleged that in the suit in the Federal court all matters and differences existing between them and the complainants were adjudicated and determined. The judgment in that case was not *res judicata* of the matters in controversy in this suit for the reason that the issues were not the same. The equitable claim for a reformation could not be asserted in the action at law. (*Hawley v. Simons,* 102 Ill. 115.) What was determined in that suit, however, operated as an estoppel by verdict. The construction of the lease was a controlling question in the case, and the court having construed the lease and entered its judgment according to the construction adopted, the determination of that question was final and conclusive between the parties, and it is immaterial that the cause of action was not the same. *Hanna v. Read,* 102 Ill. 596; *Wright v. Griffey,* 147 id. 496; *Leopold v. City of Chicago,* 150 id. 568; *Markley v. People,* 171 id. 260; *Potter v. Clapp,* 203 id. 592; *Merrifield v. Canal Comrs.* 212 id. 456; *Pratt v. Griffin,* 223 id. 349; *Teel v. Dunnihoo,* 230 id. 476; *Chicago Title and Trust Co. v. Moody,* 233 id. 634.

The evidence would not have justified any reformation or alteration of the lease, and the chancellor did not err in dismissing the bill for want of equity.

The decree is affirmed.      *Decree affirmed.*