## HENNEPIN PAPER CO. v. FORT WAYNE CORRUGATED PAPER CO.

### No. 8912.

Circuit Court of Appeals, Seventh Circuit.

Feb. 25, 1946.

Brill & Maslon, of Minneapolis, Minn., Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, Ill., Louis B. Schwartz and Josiah E. Brill, both of Minneapolis, Minn., and I. E. Ferguson, of Chicago, Ill., for appellant.

Donald J. DeWolfe, of Chicago, Ill., and James M. Barrett, Jr., of Fort Wayne, Ind. (Barrett, Barrett & McNagny, of Fort Wayne, Ind., and Hopkins, Sutter, Halls & DeWolfe, of Chicago, Ill., of counsel), for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

On July 1, 1941, a written contract * was entered into by and between plaintiff-appellant, hereinafter referred to as plaintiff, and defendant-appellee, hereinafter referred to as defendant.

---

* "This indenture, made this 1st day of July, 1941, between Hennepin Paper Company, Minneapolis, Minnesota, a Minnesota corporation, designated herein as 'Owner,' and Fort Wayne Corrugated Paper Co., Fort Wayne, Indiana, an Indiana corporation, designated herein as 'Customer.'

Customer agrees to let Owner have the use of their Paper Mill Superintendent for whatever time is necessary, free of cost, to develop in Owner's Mill and Customer's Box Shops a suitable product for use as a .009 Corrugating Material, to be used in the manufacture of Corrugated Paper Products.

Customer agrees to furnish other Executive time, free of cost, that may be necessary to promptly conclude the development of product mentioned in preceding paragraph.

Should a satisfactory .009 Corrugating Material for Customer's needs be developed, Owner agrees to sell Customer, and Customer agrees to purchase, all of Customer's needs of .009 Corrugating Material that Customer will purchase monthly from the outside up to 600 tons, more or less.

Owner agrees that he will produce up to the limit of his machine, or Groundwood capacity, all of the .009 Corrugating Material to satisfy Customer's needs.

Price to be $60.00 per ton on a 26 pound weight basis, delivered Chicago, Illinois, Rochester, New York, McKees Rocks, Pennsylvania, Hartford City, Indiana, and to be in effect for balance of year. Terms 1%—10 days—net 30 days.

When and if the price of old Corrugated should reach $22.00 per ton, shipping point, the price of finished paper shall be opened up for review.

Price to Customer after January 1, 1942, is to be the same as contract

The plaintiff, contending that defendant had failed to comply with the terms of the contract as modified orally and that it was thereby damaged, filed a suit at law for breach thereof and for damages in the United States District Court for the Northern District of Indiana on December 3, 1942, which may hereinafter be referred to as the "first action". Attached to the complaint is a copy of the contract. After some formal allegations, it is alleged in paragraph 5 of the complaint in the first action, "That at about said time, the defendant was interested in obtaining a source from which it could purchase a large quantity of such .009 Corrugating Material for use in its own business, and after obtaining full information concerning the plaintiff, its Mill, its experience, and the character of the raw materials which it customarily handled in its manufacturing business, informed and advised the plaintiff that it was in the market for a minimum of six hundred (600) tons of such material per month, and that it could probably use as much as Eight Hundred (800) tons of such material per month for a period of at least one year, and that it was willing to furnish Experts from its own Organization to help prepare the Plant of the plaintiff at Little Falls, Minnesota, and its employees, for the manufacture of such a product, if the plaintiff would undertake to give up its other paper business and devote its Plant, so far as might be necessary, to satisfy the defendant's need for such .009 Corrugating Material during said period of one year, which plaintiff agreed to do."

It is further alleged that, following this understanding, "the parties met and negotiated" the written agreement heretofore referred to. It is also alleged in paragraph 8 of the complaint that the written agreement was, during the month of October, 1941, "modified orally between the parties". Such alleged oral modification consisting, primarily, of an agreement on the part of plaintiff that it would furnish to the defendant a minimum of 800 tons per month during the life of the contract and an agreement on the part of defendant that it would order from plaintiff a total of at least 800 tons per month beginning with the month of October. It is then alleged that defendant agreed that it would send one of its experts back to plaintiff's plant to further assist it for a short time upon condition that the above amount of tonnage would be furnished. In other words, it was the contention of the plaintiff in the first action that defendant was *definitely committed* to buy of it and pay for 600 tons per month, as provided in the written contract, but that said tonnage was changed to 800 tons per month by the modified oral contract, and that it failed to comply with the provision of such contract, that is, to purchase the 800 tons per month, thereby breaching its contract and becoming liable in damages. The first action was tried upon the theory that there was a subsequent oral modification of the written contract that the parties had entered into on July 1, 1941.

The defendant by motion sought to strike out paragraph 5 of the complaint on the theory that the suit was based upon a written contract, and that the allegations contained in that paragraph consisted of alleged negotiations prior to the execution of the contract and were, therefore, merged in said written contract. Furthermore, that the written contract is clear and complete, not ambiguous, and that, therefore, no such evidence is competent. Defendant also sought in the same motion to strike out paragraph 9 of the complaint, but such motion was denied as to that paragraph and the ruling is not material in this appeal. The plaintiff contended in its brief that the written contract was ambiguous and that, therefore, such evidence was competent. As heretofore observed, plaintiff's theory was that it was a definite commitment on the part of defendant for a certain number of tons per month, and that it should, therefore, be permitted to show by parol evidence all negotiations prior to the execution of the contract.

price of .009 Corrugating Kraft. Terms 1%—10 days—net 30 days.

This agreement will be in effect for one (1) year from August 1, 1941, to July 31, 1942. However, if after six (6) months period has elapsed and it is then found that the cost of manufacture to Owner is prohibitive, or the paper to Customer not working out satisfactory, in that event sixty (60) days written notice to either party shall void and terminate this Agreement.

Fort Wayne Corrugated Paper Company (Customer)

By /s/ A. F. Stahlhut, Assistant Secretary.

Hennepin Paper Company (Owner)

By /s/ Carl E. Sager, Pres.

By ..........................."

The district court filed a short memorandum opinion in which it held in effect that the written contract was unambiguous; that the motion to strike in so far as it related to paragraph 5 of the complaint should be sustained but that such motion as to paragraph 9 should be denied. In its memorandum, the court said, "one of the questions presented by the defendant's motion to strike is whether that part of the contract * * * reading, '* * * owner agrees to sell customer and customer agrees to purchase, all of customer's needs (of .009 corrugated material) that customer will purchase monthly (from the outside) up to 600 tons, more or less,' (parentheses supplied) is so ambiguous that the allegations of parol negotiations leading up to the contract may stand in the complaint with the subsequent effect that parol evidence might be admitted to prove such allegations. The dominant and determinant part of the language under scrutiny is the word 'needs.' It imports the meaning that the defendant was bound to purchase only that amount of material which it might require. * * *" In other words, the court held that the contract was not ambiguous. Neither did it commit defendant to buy any certain number of tons per month but "only that amount of material which it might require".

After paragraph 5 was stricken from the complaint and certain amendments filed thereto, the case was put at issue by the filing of an answer by defendant, two paragraphs of which consisted of counterclaims, and a reply by plaintiff. The case was tried to a jury which returned a verdict against the plaintiff on its complaint, and for the defendant on its counterclaim in the sum of $4,222.58. Judgment was rendered on the verdict on April 21, 1944 and, on May 23, 1944, plaintiff paid the judgment rendered against it on the counterclaim and costs. No appeal was taken in that case. (First action.)

On September 22, 1944, plaintiff filed the suit in which this appeal is taken, which may be hereinafter referred to as the "second action". The defendant is doing business in Illinois, having legally qualified to do business in that state, and the second action was filed in the United States District Court for the Northern District of Illinois. In this action the plaintiff is seeking a reformation of the written contract under date of July 1, 1941, so as to make that contract conform to the "true intent and understanding of both parties" to the contract. The written contract is attached to the complaint as an exhibit and is the same contract which was filed as an exhibit to the complaint in the first action, and is the contract alleged in the first action to have been later modified orally, which was the basis for the litigation in that action.

The complaint in the second action and the one with which we are now concerned alleges in paragraph 6 substantially the same alleged facts as were alleged in paragraph 5 of the complaint in the first action, which paragraph was stricken out on motion of the defendant. It alleges in some detail a proposition which defendant is alleged to have made to plaintiff prior to the execution of the written contract of July 1 with reference to the purchase of certain corrugating material by defendant from plaintiff. The alleged proposition was, briefly, that the defendant would, without charge to plaintiff, lend plaintiff its paper mill superintendent for whatever time was necessary to develop in plaintiff's mill a suitable .009 Corrugating Material to be used in the manufacture of corrugated paper products, and that defendant would also furnish plaintiff other executive time, free of cost, that might be necessary to conclude such development, that if a satisfactory material was developed, plaintiff would produce the same to full capacity throughout a year from the date of the agreement; that all of such products should be held for defendant's needs, and defendant would be exclusive sales agent for the balance of such product, to be sold by defendant to its customers with no right in plaintiff to sell any of such surplus, save and except approximately 500 tons per month of a different material which plaintiff was already obligated to supply its customers. It is then alleged that plaintiff refused to accede to this proposal, but offered to accept it with certain modifications. Such modifications were, briefly, that (a) plaintiff would agree to use its best efforts to produce such material to the full capacity of its machinery, out of which production plaintiff would obligate itself to sell, and defendant would obligate itself to take 600 tons per month of such corrugating material at $60 per ton, if so much was produced; that defendant could use such purchased material itself or for resale to its customers; that defendant would not be given an exclusive agency

for the sale of any part of such production, but as the capacity of plaintiff's machinery increased, the amount might be increased over and above the minimum of 600 tons per month; (b) that the price of the finished .009 material should be opened up for review under certain circumstances stated in this subdivision, such provision being similar to a provision in the written contract; (c) that the contract should be in effect for one year from August 1, 1941 to July 31, 1942; that during the first six months of such contract the defendant was obligated to take such minimum production, whatever the amount thereof turned out to be, up to a maximum of not to exceed 600 tons per month, even though the paper was not working out satisfactorily to defendant, but that during the last six months of the contract it might be terminated by defendant if the paper was not working out satisfactorily by defendant giving 60 days' written notice to plaintiff; that during the first six months of the contract plaintiff could not terminate it, although the cost of manufacture became prohibitive, but it might, during the last six months, under those conditions, terminate such contract by giving sixty days' notice. It is further alleged that the defendant "accepted said modified proposal", following which acceptance the written contract was executed as set forth in Exhibit A attached to the complaint in both the first and the second action, but that such contract "does not and did not express the said agreement actually agreed to and entered into between plaintiff and defendant and is not in accordance with the true intent and understanding of both parties thereto." It is the contention of plaintiff that the written contract should "be reformed and redrawn in accordance with the true intent and understanding of both parties as above set forth"; that it should be adjudged that defendant had breached such contract as thus reformed and redrawn and that plaintiff should be awarded damages for such breach.

On November 14, 1944, the defendant filed in the district court a motion for summary judgment in the second action in accordance with Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A: following section 723c, which motion was supported by the affidavit of Harold M. Treen, President of the defendant corporation. The affidavit set forth at great length the history of the first action. There were also attached to the affidavit certified copies of all pleadings, motions, briefs, memorandum opinion on motion to strike, request of plaintiff for instructions, verdict of jury, etc. In response to the motion of defendant for a summary judgment, the plaintiff filed the affidavit of Carl E. Sager, President of plaintiff corporation, to which affidavit was attached a copy of the instructions given by the court in the first action. On June 28, 1945, the motion for summary judgment was granted and judgment entered accordingly, from which judgment this appeal is being prosecuted.

The first action was tried upon the theory that the written contract of July 1, 1941, had been modified, approximately two or three months after its execution, by an oral agreement entered into by and between the same parties who had executed the written contract. The case was tried upon that theory, but the jury found against the plaintiff. It accepted the verdict of the jury, paid the judgment against it rendered on the counterclaim, and did not appeal.

■ Under the Federal Rules of Civil Procedure, and under the law of Indiana, the plaintiff had the right, in the first action, to, by proper pleading, ask that the written contract of July 1, 1941, be reformed and redrawn, as it is attempting to do in the second action. It certainly knew the same facts at the time the district court struck out paragraph 5 of the complaint in the first action, as it knew at the time it drafted the complaint in the second action, and it should have filed either an amended complaint or an additional count or paragraph in that action so as to have presented all issues in the same action. This it could have done "regardless of consistency and whether based on legal or on equitable grounds or on both." Rule 8(e) (2) Federal Rules of Civil Procedure. The authority to thus have joined its claims is specifically provided for in Rule 18 of the Federal Rules of Civil Procedure, as follows, "(a) Joinder of Claims. The plaintiff in his complaint * * * may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party." See, also, Burns' Indiana Statutes, Annotated, 1933, Sec. 2-101, which reads as follows: "One form of action.—There shall be no distinction in pleading and practice between actions at law and suits in equity; and there shall be but one form of action for the enforcement or protection

of private rights and the redress of private wrongs, which shall be denominated a 'civil action.' All courts which are vested with jurisdiction both in law and equity may, to the full extent of their respective jurisdictions, administer legal and equitable remedies, in favor of either party, in one and the same suit, so that the legal and equitable rights of the parties may be enforced and protected in one (1) action."

In the second action, plaintiff seems to take the position that, in the first action, the oral modification of the written contract of July 1, 1941, created an independent oral contract separate and apart from such written contract. If that position is sound, we must entirely ignore the allegations of the complaint in the first action wherein it charges, "That during the month of October, 1941, said written agreement was modified orally between the parties in this; that the defendant agreed it would send one of its experts back to plaintiff's plant at Little Falls, Minnesota, to further assist plaintiff for a short length of time, upon condition that the plaintiff would agree to furnish defendant a minimum of Eight Hundred (800) tons per month during the life of the contract, Exhibit 'A', whereupon the defendant agreed that it would order from the plaintiff a total of at least Eight Hundred (800) tons of such Corrugating Material per month, commencing with and including the month of October, but that *otherwise the agreement between the parties should remain in full force and effect, in accordance with the terms therein set forth,* to all of which plaintiff agreed. That as a result of the foregoing *oral* and *written* agreement, the plaintiff manufactured and shipped to the defendant, and the defendant accepted and paid for such .009 corrugating material as follows * * *". (Our italics.) The evidence to sustain these allegations of the complaint was a part of the evidence submitted in the first action in an attempt to show that the written contract was modified by oral agreement. It is also to be noted that the court gave, at the plaintiff's request, the instruction that the issue to be determined by the jury was "whether or not there was an oral change in the written contract rather than whether there was an oral contract". Therefore, it seems clear that the plaintiff predicated his first suit on the written contract plus the alleged subsequent oral modification of one of its terms. The applicable rule is stated in the case of Boardman et al. v. Bubert et al., 325 Ill. 38, 155 N.E. 784, 786, as follows: "The extent to which a contract is modified by a waiver or supplemental agreement depends on the nature of the change and the intention of the parties. * * * Except insofar as the contract was modified by the parties, it stands as it was written. Davis v. Commonwealth, 164 Mass. 241, 41 N.E. 292, 30 L.R.A. 743; Grace Contracting Co. v. Norfolk & Western Railway Co., 259 Pa. 241, 102 A. 956; Newhall Land & Farming Co. v. Burns, 31 Cal.App. 549, 161 P. 14." To the same effect are, McKinney v. Springer, 3 Ind. 59, 54 Am. Dec. 470; Foltz v. Evans, 113 Ind.App. 596, 49 N.E.2d 358. The plaintiff now takes the position that the maximum tonnage under the contract as it seeks to have it reformed is 600 tons per month instead of 800 tons per month as it attempted to prove in the first action under the modified oral agreements. It made its election in the first action and it cannot now, in a separate action, assume an entirely different and inconsistent position in an effort to have the same written contract reformed. As heretofore observed, such effort, if it desired a reformation of the contract, should have been undertaken in the first action.

The Supreme Court of Indiana, in the case of Royal Insurance Co. v. Stewart, 190 Ind. 444, 129 N.E. 853, 857, said, "Where a party elects to sue upon a written contract as executed, and the action proceeds to trial and judgment, he cannot thereafter bring an action to reform the contract. 2 Black on Judgments, § 632 * * *." Again, in the case of Knight v. Electric Household Utilities Corp., 133 N. J. Eq. 87, 30 A.2d 585, 588, affirmed 134 N.J.Eq. 542, 36 A.2d 201, the court said, "Whether a plaintiff is precluded by the judgment, depends upon the extent to which legal and equitable remedies have been merged in the state where the judgment is rendered. Restatement—Judgments § 66. The judgment bars the suit for reformation if the plaintiff could have obtained reformation in his original action on the contract. Royal Ins. Co. v. Stewart, Inc., 190 Ind. 444, 129 N.E. 853. But where the law court cannot give equitable relief, the judgment is not a bar. Northern Assur. Co. v. Grand View Bldg. Ass'n, 203 U.S. 106, 27 S.Ct. 27, 51 L.Ed. 109." In Sibert v. McAvoy, 15 Ill. 106, the facts were identical to those of the instant case, and

the court in denying the remedy of reformation in the second action, stated, "He had no right, first, to go to the court of law and there try the experiment to see whether he could not get such a construction adopted as would make it embrace all that he contended for, as constituting the agreement of the parties, and failing in that, go into equity to get that inserted in the contract which he insisted was in it before." Also see David A. Manville & Co. v. Francis Oil & Refining Co., 8 Cir., 20 F.2d 473, 474, where the party seeking reformation in the second action had failed to make the defense of mistake of facts in the first action, and the court stated, "Appellant hazarded its defense upon the construction of the written contract, and the judgment of the New York court is conclusive as to every question which was presented or which might have been presented and determined therein." In a reverse situation, that is, where the first action was in equity and the second at law, the Supreme Court of the United States held as follows, "But here in the equity suit the plaintiff in error, upon the coming in of the defendant's plea of the statute of limitations, made no offer to amend or request to transfer the case to the law docket, but proceeded to trial and judgment upon the original bill, with knowledge of all the facts for more than 6 years prior to the filing of its bill. Defeated in its equity suit, it brought its action at law upon the same allegations of fact. We think it is not admissible to thus speculate upon the action of the court, and having met with an adverse decision, to again vex the defendant with another and inconsistent action upon the same facts * * * ." United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 101, 67 L.Ed. 261. For other cases adverse to the plaintiff's contention, see Lyons v. Empire Fuel Co., 6 Cir., 262 F. 465; Coos Bay Lumber Co. v. Collier, 9 Cir., 104 F.2d 722; Ruffner v. McConnel, 17 Ill. 212, 63 Am. Dec. 362; Silurian Oil Co. et al. v. Neal et al., 277 Ill. 45, 115 N.E. 114; Steinbach v. Relief Fire Ins. Co., 12 Hun., N. Y., 640, affirmed 77 N.Y. 498, 33 Am.Rep. 655; Allen v. United States Fire Ins. Co. of New York, 270 N.Y. 597, 598, 1 N.E.2d 348; Wyandotte Public Schools v. Harding, 157 Mich. 86, 121 N.W. 296; Washburn v. Great Western Ins. Co., 114 Mass. 175; Eder v. Fink, 147 Minn. 438, 180 N.W. 542; Leaksville Light & Power Co. v.

Georgia Casualty Co., 193 N.C. 618, 137 S. E. 817.

 Not only under the Federal Rules of Civil Procedure, but under the law of Indiana, the plaintiff could have, in the first action, sought a reformation of the contract, and it was its duty to have done so if it desired to litigate that question. Not having done so, and having sought an entirely different and inconsistent remedy in that action, it cannot now maintain the second action. The district court properly granted the motion of defendant for a summary judgment.

The judgment of the district court is affirmed.