## DENISON v. CRAWFORD COUNTY.

1. **Contract: SWAMP LANDS : PUBLIC POLICY.** A contract between a county and an agent provided that the latter should be authorized to make the proper application to the general government for its swamp lands, or indemnity therefor, and that he was to receive one-half of what he thus procured for his services. To effect the object of his contract, certain congressional action became necessary, which he aided in procuring by legitimate means: *Held*, that the contract was not void as against public policy, and that a county may lawfully employ agents for such purpose, and an agreement to pay them is valid.

*Appeal from Greene Circuit Court.*

THURSDAY, APRIL 18.

THE plaintiff and defendant entered into the following contract. "This contract or article of agreement made and entered into this 4th day of January, 1871, by and between the county of Crawford, in the State of Iowa, by the board of supervisors, this day in session in said county, of the first part, and Jesse W. Denison, of the same county, of the second part, witnesseth: That, whereas, the said county has never as yet

received any benefit from the act of Congress known as the Swamp Land Act (of September 18, 1850), and, whereas, said Denison is willing, at his own expense, to inquire into the merits of the case, and if by him deemed such as to justify an effort to secure to the said county an interest justly due, to make such survey of lands in said county as may be necessary for a proper showing to the proper department at Washington for securing the claim;

"Wherefore, it is hereby agreed that the said Denison is at liberty, at his own expense and personal responsibility, to make such survey as above named, and to press such claim upon the attention of the government as to him may seem necessary for securing the claim, provided he takes no steps nor measures that shall in any way make the said county liable for costs, directly nor indirectly, in the matter. And that if he succeeds in thus securing anything—money or land warrants—from the general government for the benefit of said county, he is to have for his trouble and expense one-half of the gross receipts, after deducting in his favor the expense of said survey, provided such expense shall not exceed the sum of five hundred dollars, and that no arrangement is to be made by said county with any other person or party for securing such swamp land claim till the said Denison shall have a reasonable length of time—at least five years—for securing the object herein contemplated. Also, that if in the prosecution of the work it should become necessary for the county to authorize the survey or to sanction it after surveyed in any way whereby liability may attach to the county for the expense of the survey, that the said Denison is to give security or bonds for such expense."

The petition states that in pursuance of said contract the plaintiff undertook and successfully prosecuted the claims therein referred to, whereby the defendant had received a large sum of money. This action is brought to recover the compensation provided in the contract, and for expenses as therein contemplated.

The answer consists of a general denial, and alleges the contract is champertous and void as against public policy. There was a trial by jury, verdict and judgment for the plaintiff, and defendant appeals.

*E. W. Sargent, Tabor & Tabor,* and *Jas. A. Henderson,* for appellant.

*Harvey & Lehmann,* for appellee.

SEEVERS, J.—At the time the contract was entered into, the defendant was entitled, under the acts of Congress of September 28, 1850, March 2, 1855, and March 3, 1859, and certain acts of the General Assembly of this State, to the swamp lands within the county, upon due proof being made of their swampy character before the officers of the general government, whose duty it was to pass on the sufficiency of the proof.

Selections had been made, lists prepared, and proof made, but it was held by said officers that the lists were not properly filed, and said officers refused to pass upon the selections or as to the sufficiency of the proof.

Such selections, lists and proof belonged to the Emigrant Company by whom they had been procured. There is no evidence tending to show that at the time that contract was made either of the parties to the action had any knowledge such lists and proof were on file.

Soon after the contract was made the plaintiff employed one Skinner to aid or assist him in the prosecution of the claims and it is claimed that Skinner, by his personal influence or otherwise, aided in procuring the passage by Congress, on March 5, 1872, of the following act or law:

"Be it enacted, etc., That the Commisioner of the General Land Office is hereby authorized and required to receive and examine the selection of swamp lands in Lucas, Dickinson, O'Brien, and such other counties in the State of Iowa as for-

merly presented these selections to the Surveyor-General of the district including that State, and allow or disallow said selections and indemnity provided for according to the acts of Congress in force touching the same at the time such selections were made, without prejudice to the legal entries or rights of *bona fide* settlers under the homestead and pre-emption laws of the United States prior to the date of this act."

Under the provisions of this law the officers charged with that duty proceeded to do what they had refused to do. That is, they examined the selections and lists, as also the proofs as to the character of the lands, and determined the defendant was entitled to a certain amount of money which was passed over to the county. Such are the main and leading facts. The law of the case remains to be determined.

It was held in *Allen v. Cerro Gordo County*, 34 Iowa, 54, that the counties in this State had and possessed the requisite power to enter into contracts like the one in question.

As to the amount of the recovery, and the manner the case was submitted to the jury with reference thereto, we are unable to say there was any error.

The main, and with propriety it may be said, only question presented and discussed by counsel, is that the contract is void 1. CONTRACT: because against public policy—its tendency being swamp lands: public policy. to corrupt the county authorities, the legislation of Congress, and officers of the government.

There is nothing on the face of the contract that indicates that corrupt or improper influences were to be used, unless a strained construction of the words is adopted. Looking at the contract alone, there is nothing to indicate any means were to be used except those which were fair and legitimate. The circumstances surrounding the contract and its execution should be examined for the purpose of its proper interpretation. But there is no testimony tending to show that Denison or the county authorities contemplated the use of any means which were not legitimate. It does not appear that either party to the transaction knew or supposed an act of

Denison v. Crawford County.

Congress was required, or in fact that anything was necessary except to bring the claim in a proper manner before or to the attention of the proper officers.

Congress had recognized the fact that the defendant was entitled to the swamp lands within its borders, and if the same had been sold, to money in lieu of such. Before this claim, however, could be recognized or made available, certain things had to be done by the county. As it turned out after the contract was made, it became necessary to bring the matter to the attention of Congress and obtain further legislation.

It was perfectly competent for the county to employ agents or attorneys for this purpose, and an agreement to pay them therefor is valid. Such agents may lawfully draft "the petition to set forth the claim, attend to the taking of testimony, collecting facts, preparing arguments, and submitting them orally or in writing to a committee or other proper authority, and other services of like character. All these things are intended to reach only the reason of those sought to be influenced." SWAYNE, J., in *Trist v. Child*, 21 Wall., 441.

If, however, the agent or attorney conceals from the members of Congress the capacity in which he is acting, or appears to be other than he actually is, legislation procured thereby may be said to have been obtained by improper means, and a contract to pay a compensation therefor is void as against public policy. *Marshall v. Balt. & Ohio R. R. Co.*, 16 How., 314.

In these cases, and all others of a like character to which our attention has been called, either the contract on its face, or when viewed in the light of the circumstances surrounding the transaction, clearly disclosed the fact that improper means and influences were to be used to accomplish the desired end. The parties so contemplated and contracted accordingly. Nothing of the kind appears here, and if this contract be declared void, then it will be difficult, if not impossible, to make one providing for the compensation of an agent or attor-

ney who may be employed to prosecute claims before any department of the goverment. Conceding it to be proper to look at what was done by Skinner when at Washington City, endeavoring to obtain the passage of the act of Congress of March 5, 1872, for the purpose of arriving at the design and intent of the contract (which we very much doubt), still we are unable to say anything was done by him that was improper to accomplish that result.

There is nothing which tends to show he used any means except such as were calculated to appeal to the reason and judgment of the members of Congress.

Agents of this State and of Missouri, together with persons employed by other counties, were in Washington endeavoring to accomplish the same result. By their combined efforts, and the justice of the measure asked, they were successful. Without any serious doubt we think Mr. Skinner claims fully as much credit, if not much more, than he is fairly entitled to.

AFFIRMED.