WILLIAM B. LOUDENSLAGER v. CITY OF ATLANTIC CITY.

Argued June 8, 1910—Decided November 5, 1910.

A resolution was passed by the city council of Atlantic City to pay the expenses of that body, together with the mayor, city engineer, and city solicitor, in visiting Pensacola and New Orleans to inspect drainage systems in operation in those cities, as a preliminary to the installation of one in Atlantic City, "the expenses * * * to be paid out of the funds now in the treasury belonging to the drainage canal and lateral drainage system." There was no appropriation for the purpose, the only balance in the treasury belonging to the drainage system was from the proceeds of bonds issued under ordinance "for the purpose of providing moneys for the payment of contracts now made or hereafter to be made for the construction and installation * * * of a drainage canal," &c. *Held*, that the resolution was beyond the purpose specified in the ordinance and was invalid.

On *certiorari.*

Before Justices SWAYZE and VOORHEES.

For the prosecutor, *Thompson & Cole.*

For the defendant, *Harry Wootton.*

The opinion of the court was delivered by

VOORHEES, J. The city of Atlantic City having in 1906 by ordinance determined to construct and install a drainage canal and general underground drainage system, on February 28th, 1910, before the work had been contracted for, passed the following resolution which, on March 1st, 1910, was approved by the mayor. The resolution is in these words:

"WHEREAS, It is proper that an examination be made of a completed drainage and canal system, similar to the proposed system to be constructed in Atlantic City, before contracts are made for the latter, and whereas, similar systems have been installed in Pensacola, Florida, and in New Orleans,

*"Be it resolved,* That city council, with the mayor, city engineer and city solicitor, do visit said cities for the purpose of inspecting installed drainage systems and reporting thereon to city council. That the expenses attending such inspection be paid out of the funds now in the treasury belonging to the drainage canal and lateral drainage system, and that the comptroller and treasurer pay on demand to such person as shall be designated by the street committee such amount as said committee shall certify to be required for such expenses, such expense, however, not to exceed the sum of two hundred dollars per person."

To review the legality of this resolution the prosecutor, a resident and taxpayer of the city, has sued out this writ of *certiorari.*

The comptroller, upon a certification of the resolution, drew a warrant to the order of E. R. Donnelly (who was the city clerk and the person designated by the street committee to receive the money), for the sum of $3,400, the amount certified by the above committee as the sum required for the expenses. Thereupon Donnelly drew the money, used part of it in paying the railroad for a Pullman car and transportation, and took the remainder of the money with him upon the trip to defray the other expenses. After the return of the party the following statement of account was rendered to the city council:

Railroad expenses, including mileage
    and Pullman charges............$2,687 37
Extra expenses, hotels, conveyances
    and incidental charges........... 271 25

    Total .....................$2,957 62
Balance repaid to city treasurer..... 442 38

                   $3,400 00

The council consisted of seventeen members, who, with the mayor, engineer and solicitor included in the resolution, made up a party of twenty. Two other persons were invited by the

street committee and its action was subsequently approved. Five others joined them but without additional charge to the city on account of railroad transportation, that having been contracted for. They paid for their meals.

The money was paid out of the "Drainage Bonds" fund. In December, 1908, an ordinance had been passed authorizing an additional issue of bonds, to the amount of $100,000 (the previous issue having been exhausted), a balance of the proceeds whereof constituted the "Drainage Bonds" fund. There was no appropriation for the purpose. Section 105 of the statute under which the city is incorporated (*Pamph. L.* 1902, *p.* 284) requires that all issues of bonds shall be authorized by ordinance, in which shall be expressed the purpose for which the bonds are to be used, and forbids the proceeds thereof to be used for any other purpose.

The ordinance authorizing this issue specified the purpose to be to provide "moneys for the payments of contracts now made or hereafter to be made for the construction and installation * * * of a drainage canal and general underground drainage system." It was admitted that there was no appropriation for the payment of the warrant, save that against which the draft was charged. The only "funds now in the treasury belonging to the drainage canal and lateral drainage system" were the balance of the proceeds of the bonds.

The resolution was clearly not within the purpose. It was not for the payment of contracts for construction or installation. The action was therefore unlawful (*Atlantic City Water Co.* v. *Reed,* 21 *Vroom* 665), and the resolution will be set aside, with costs.