JOHN M. KEMBLE, Appellee, v. H. O. WEAVER et al., Appellants.

**INJUNCTION:** Pleading — Nonpermissible Issue.   In injunction to
1   annul the allowance by the board of supervisors of a claim for at-
torney fees in drainage proceedings, the court will not, in the ab-
sence of fraud, review either the allowance of the claim or the
proper amount of such allowance.

**CONTRACTS:** Legality of Object—Contract for Lobbying.   The action
2   of a board of supervisors on behalf of a public drainage district in
employing attorneys to induce the state legislature to make an ap-
propriation with which to pay the assessment on state-owned lands
within the district is not violative of public policy, and the allow-
ance of a claim for such services is proper, it appearing that the
contract was carried out without the employment of any improper
influence whatever.

**CONSTITUTIONAL LAW:** Right of Petition—Construction.   The con-
3   stitutional right of the people to petition their legislature for a
redress of grievances is no impediment in the way of a board of
supervisors, acting for a public drainage district, in entering into
a proper and unobjectionable contract with attorneys to secure leg-
islation which will carry out a moral obligation on the part of the
state.

**DRAINS:** Maintenance—Implied Power to Employ Counsel.   Boards of
4   supervisors acting on behalf of public drainage districts have im-
plied power to contract with attorneys to appear before the legis-
lature and by proper means seek to induce the legislature to so
legislate that a moral obligation on the part of the state with
reference to the district will be fulfilled.

Headnote 1:   19 C. J. p. 633 (Anno.)   Headnote 2:   13 C. J. p. 431.
Headnote 3:   13 C. J. p. 432.   Headnote 4:   19 C. J. p. 628.

*Appeal from Muscatine District Court.*—A. P. BARKER, Judge.
                    DECEMBER 15, 1925.

THE plaintiff is the owner of land within defendant Joint
Drainage District No. 13, and, in behalf of himself and others
having a like interest, sues H. O. Weaver, John J. Seerley, the
joint drainage district, and the supervisors, auditors, and treas-

urers of the two counties in which the district lies, to annul the allowance and restrain the payment of the claim of Weaver and Seerley against the district for services as attorneys. The plaintiff was successful in the trial court, and the defendants appeal. —*Reversed.*

*Arthur Springer* and *C. R. Stafford,* for appellants.

*M. W. Stapleton,* for appellee.

MORLING, J.—The claim in question is against the drainage district, and reads: "To two years' services as attorneys for said district, $4,000."

I.   Plaintiff objects that the statement is not sufficiently itemized. It has been allowed to the amount of $3,000. It is not a claim against the county. The board assumed to have

1. INJUNCTION: pleading: non-permissible issue.

sufficient information to warrant them in such allowance. The action of the board allowing the bill is not the subject of review in this action, in the absence of fraud. The cases cited by plaintiff, *Hegele v. Polk County,* 92 Iowa 701, *Marsh v. Benton County,* 75 Iowa 469, and *Escher v. Carroll County,* 146 Iowa 738, are not authority for the interference by the court to vacate the action of the board.

II.   It is alleged that the allowance is excessive. Neither is this a subject of review in this suit, except as it may bear on the question of fraud or illegality. The only evidence upon the subject of reasonableness is that given by the claimants, and is to the effect that their services were worth much more than the amount allowed.

III.   The plaintiff places his suit principally upon the ground that the bill was for services as lobbyists. The facts, so far as they are relevant to this ground of action, are, in sub-

2. CONTRACTS: legality of object: contract for lobbying.

stance, as follows:

The defendants Weaver and Seerley had been attorneys for the district, with possibly a slight interruption on the part of Weaver, since 1910. Included in the lands drained was a large acreage belonging to the state. The district was bonded. The failure of the state

to pay its assessment caused a deficit and threat of action upon the part of the bond holders. On December 27, 1922, a committee, consisting of the engineer, one member of the board from each county, and the attorneys for the district, Weaver and Seerley, was appointed, as the record of the joint meeting states, "to look after legislative matters of interest to Drainage District 13." The report of this committee offered in evidence by plaintiff recites that a meeting was held, immediately upon its appointment, to determine its policy, and that three methods were considered: First, an appropriation by the state; second, the turning' over to the district of the state land, and the application of the proceeds from the sale of the land on the state indebtedness; third, sale of the land by the state, and application of proceeds on its indebtedness. The report states that the committee decided to proceed with the first plan, and concluded that the legislature would be willing to pay the indebtedness, if fully informed as to the facts, and that, as each individual member of the legislature must vote on the question, the facts would need to be placed before each individual member of the legislature and before the committees, in order that they be fully informed.

In this connection it is argued by appellee that the attorneys worked for a bill for the relinquishment of the state lands to the district, rather than for an appropriation. The engineer and the two attorneys testified that their efforts first were to secure an appropriation, and that the other proposals were alternative. They had doubts about being able to obtain the appropriation, and frankly expressed this. William Hoffman, one of the landowners, says that Mr. Seerley stated at the committee meeting that he didn't believe the legislature would pass an appropriation bill, and that there was no use to introduce it; that he thought the other bill would go through. Mr. Hoffman says that he replied that he knew the representative and senator intended to introduce the appropriation bill, and that, if they introduced the other bill, it would defeat the appropriation; that the land would sell for only a small amount, and the result would be an increased assessment on the other lands. The evidence shows that, while the attorneys believed that the chances of getting an appropriation were against them, and they

did prepare a bill for the transfer of the state lands to the counties, that bill was not introduced. They did work primarily and loyally for the appropriation. The senator and representative were more hopeful, and their efforts were directed toward getting the appropriation. The representative testified that he explained the appropriation bill to every member of the House to the best of his ability, and was very anxious to get it through, because he thought it was just, and wanted them to know exactly the condition the people were in down there. He was on the board when the district was established, and was thoroughly acquainted with the situation. The defendant attorneys met with the attorney-general, "who went into the matter very thoroughly, and finally agreed that it was the proper thing for the state to relieve the district of this indebtedness," and gave them a written opinion on the subject. They submitted the opinion of the attorney-general and a report of the executive council to every member of the House and Senate, together with a history of the district and of the assessments and the cost of the district and of its maintenance, including, also, "tables that were prepared by the attorneys and the engineer." The defendant Weaver says:

"There were times, because of failure of crops and breaking of the levee in that district, that it was difficult for the landowners to meet their taxes; and it seemed advisable for the district to have the privilege of refunding its bonds; and this bill which Mr. Seerley and I prepared, was passed to cover that matter. I think I was in Des Moines thirty-two days."

There is no evidence that anything in the way of a sale or the exercise of personal, political, secret, or private influence or corruption was in the minds of anyone concerned, or was resorted to. Mr. Seerley says that, as far as he was concerned, or heard:

"There was not a word said by us out of Des Moines or any place else that we would have objected to you or anybody else hearing, because everything was just right out in the open. I think I talked to every senator and representative. I talked to them in favor of these three bills, and tried to say that that was the proper thing to do. We didn't try to persuade them. We told them what we thought the truth was."

He testifies that he talked to them whether in the hotel or elsewhere. The fact of employment is not questioned.

It is to be borne in mind that the state was the proprietor of land which had been assessed for benefits on a presumed equality with the assessments against other lands in the district; that the state, although receiving proportionately the same benefits as the other landowners were receiving, was neglecting to pay its proportion, and thereby, for its default, bringing to its associate owners in the district danger of foreclosure and loss. The purpose of the employer and of the employee was to secure from the state the performance of its moral obligations as a proprietor. The state could be approached only through its agents, and those agents were the legislature. If the defaulting associate proprietor had been, instead of the state, an individual, whose interests were being exclusively looked after by an agent, or if it had been a private corporation or a municipal corporation, and the attorneys had been employed to negotiate with the agent having charge of the individual's interests, or with the board of directors or council, no one would, from those facts alone, draw an inference of a purpose or effort to corrupt. It is not claimed that the compensation of the attorneys was to be contingent upon their success. In fact, no express contract was made.

The case is not one of attempting, by indirection or the exertion of a personal or political influence or other improper means, to procure a private contract or special privilege or beneficial legislation or payment of a private claim, without reference to its merits. Nor is it an effort by the county to oppose general legislation. It was not expected that any pecuniary interest of the attorneys' would be brought into play, or nefarious means be resorted to; nor was such exerted. There was no employment further than to render professional services openly and in a professional way, to secure the performance by the state of a duty resting upon it as proprietor. The existence of any improper means of accomplishment is refuted by the evidence. On this record, the employment of the defendant attorneys cannot be held to have been illegal, or against public policy. *Cole v. Brown-Hurley Co.,* 139 Iowa 487; *Denison v. Crawford County,* 48 Iowa 211; *Stansell v. Roach,* 147 Tenn. 183 (246 S. W. 520); *County of Campbell v. Howard,* 133 Va. 19 (112 S.

E. 876); *Herrick v. Barzee,* 96 Ore. 357 (190 Pac. 141); *Valdes v. Larrinaga,* 233 U. S. 705; *Nutt v. Knut,* 200 U. S. 12; *County of Colusa v. Welch,* 122 Cal. 428 (55 Pac. 243); *Foltz v. Cogswell,* 86 Cal. 542 (25 Pac. 60). The cases cited by appellee do not lay down a different rule. *Trist v. Child,* 21 Wall. (U. S.) 441; *Richardson v. Scott's Bluff County,* 59 Neb. 400 (81 N. W. 309); *Nutt v. Knut,* 200 U. S. 12; *Chippewa Valley & S. R. Co. v. Chicago, St. P., M. & O. R. Co.,* 75 Wis. 224 (44 N. W. 17); *Burke v. Wood,* 162 Fed. 533.

IV. The plaintiff appeals to Section 20, Article 1, of the Constitution:

"The people have the right freely to assemble together to counsel for the common good; to make known their opinions to their representatives and to petition for a redress of grievances."

3. CONSTITUTIONAL LAW: right of petition: construction.

We do not think that the right to petition for a redress of private grievances is a denial of the right to employ attorneys or agents to assist in securing from the state such redress.

V. It is argued that the joint boards of supervisors had no authority to employ attorneys. The district is under the supervision of the joint boards. They are the representatives of the district and the taxpayers, and have their interests in charge. It is made their duty, when an appeal is taken from their order, to employ counsel.

4. DRAINS: maintenance: implied power to employ counsel.

The necessity of this is obvious in the case of appeals; but the legal rights of the district or the taxpayers as a whole, and of the boards as acting for them, are necessarily involved in many other ways than in appeals, and the necessity for the employment of counsel is just as pressing. Numerous instances have come before the courts, such as suits with contractors, suits involving the right of way, suits for unlawful flooding, suits to declare the organization a nullity, and suits involving the validity of, or to enforce, assessments. We are of the opinion that the joint boards of supervisors, in the exercise of their duties to conserve the interests of the district and the taxpayers, had implied authority to employ counsel and take measures to collect from the state the assessments made against its land. *Taylor County v. Standley,* 79 Iowa 666; *Wilhelm v. Cedar County,* 50 Iowa 254; *Jordan & McCallum v. Osceola County,* 59 Iowa

388; *County of Campbell v. Howard,* 133 Va. 19 (112 S. E. 876) ; *County of Colusa v. Welch,* 122 Cal. 428 (55 Pac. 243).
  The decree is—*Reversed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.

VERMILION, J., takes no part.