HAYS *v.* CITY OF KALAMAZOO.

1. MUNICIPAL CORPORATIONS—CONSTRUCTION OF STATUTES—HOME-RULE CITIES—CONSTITUTIONAL LAW.

Statute prescribing as a mandatory provision for home-rule city's charter that there shall be "an annual appropriation of money for municipal purposes" must be construed in connection with the home-rule provisions of the Constitution (Const. 1908, art. 8, §§ 20–25).

2. PARTIES—INTERVENTION—INTEREST OF INTERVENOR.

In suit by taxpayer against city to enjoin latter from payment of dues to municipal league whose activities in part consisted of engaging in certain activities before the legislature in behalf of its constituent members, leave to intervene was properly granted to league, where it showed it was financed entirely by dues from members, a sufficient interest being shown thereby.

3. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—CONSTRUCTION OF TERM "PUBLIC PURPOSE."

The expression "public purpose," as used in provision of Constitution restricting use of tax moneys collected by municipalities has not been given a definite meaning that will be applicable under any and all circumstances (Const. 1908, art. 8, § 25).

4. WORDS AND PHRASES—PUBLIC USE.

A public use changes with changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population and by new modes of transportation and communication.

5. MUNICIPAL CORPORATIONS—PUBLIC PURPOSE.

Generally, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation, the sovereign powers of which are used to promote such public purpose.

6. SAME—MUNICIPAL PURPOSE.

The phrase "municipal purpose," used in the broader sense, is generally accepted as meaning public or governmental purpose as distinguished from private.

7. WORDS AND PHRASES—PUBLIC USE.

The test of "public use" is not based upon the function or capacity in which or by which the use is furnished but upon the right of the public to receive and enjoy the benefit of the use.

8. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—HOME RULE.

The provisions of the present Constitution, relating to cities and villages, were designed to give such municipalities greater powers of self-government than they had previously had and the city home-rule act was enacted with such thought in mind (Const. 1908, art. 8, §§ 20–25; 1 Comp. Laws 1929, § 2228 et seq., as amended).

9. SAME—GENERAL GRANT OF RIGHTS AND POWERS.

Under the present Constitution cities and villages now have a general grant of almost exclusive rights and powers in the conduct of their affairs instead of only certain enumerated rights and powers definitely specified which they had formerly (Const. 1908, art. 8, §§ 20–25).

10. SAME—CONSTRUCTION OF CITY HOME-RULE ACT.

By the home-rule act the legislature intended to, and did, confer upon cities the power to manage their own local affairs in their own way provided only that in so doing they should not contravene any constitutional or statutory provision (Const. 1908, art. 8, §§ 20–25; 1 Comp. Laws 1929, § 2228 et seq., as amended).

11. TAXATION—NECESSITY—PUBLIC WELL-BEING.

Necessity alone is not the test by which the State's power to tax is limited, as the legislature is not precluded from taxing for governmental ends subservient to the general well-being of society and for advancement of the present and prospective happiness and prosperity of the people.

12. MUNICIPAL CORPORATIONS—HOME-RULE CITY—MEMBERSHIP IN MUNICIPAL LEAGUE.

A home-rule city has the right to become a member of a municipal league which was a nonprofit corporation and use public funds in payment of reasonable charges in order to avail itself of various services rendered thereby including furnishing of information, research, municipal education and procurement of legislation beneficial to municipalities, since the use of the funds was for a city public purpose.

13. CONTRACTS—APPEARANCE BEFORE LEGISLATIVE BODIES OR COURTS —PUBLIC POLICY.

All persons whose interests may be affected by any public or private act of the legislature have an undoubted right to urge

their claims and arguments, either in person or by counsel professing to act for them, before legislative committees, as well as in courts of justice, hence, an agreement, express or implied, for professional services in drafting petitions to a legislative body, in collecting evidence, preparing arguments and submitting them to legislative committees or other authorities is valid.

14. MUNICIPAL CORPORATIONS—DISCRETION OF OFFICERS—PUBLIC EXPRESSION—COURTS.

Municipal officers have a broad discretion in promoting the welfare of their communities and the precise manner in which their views should be presented is within their discretion as courts cannot control the form of public expression.

15. SAME—CONTRACTS—PUBLIC POLICY—APPEARANCE BEFORE LEGISLATIVE COMMITTEES.

A city authorized to own and operate certain utilities is thereby vested with powers of a proprietary nature, which it is required to exercise for the use and benefit of its people, hence, legislation, pending or anticipated, affecting the performance of such functions concerns the city and entitles it to have evidence and arguments presented to legislative committees by delegates, representatives, agents or attorneys and compensate such people for services rendered and legitimate expenses incurred without contravening any public policy (Const. 1908, art. 8, § 23; 1 Comp. Laws 1929, § 2228 *et seq.*).

16. SAME—MUNICIPAL LEAGUE—CONFLICTING INTERESTS.

Fact that interests of a city might not be in harmony with arguments presented by officers of a municipal league of which the city is a constituent member and which engages in presenting views upon matters to committees of the legislature would not preclude city from itself placing before members of the legislature its own views to assist legislators in arriving at a proper understanding of effects of proposed legislative action nor affording itself of right to receive such benefits of the services rendered by the league.

17. SAME—PUBLIC POLICY—PRESENTATION OF INFORMATION TO LEGISLATURE.

The expenditure of public funds for the purpose of giving to the legislature information with reference to the subject-matter of proposed or anticipated legislation affecting problems of cities and villages, to the end that performance of municipal functions contemplated by pertinent constitutional and statutory provisions may be aided by appropriate and

expedient legislation, is not against public policy (Const. 1908, art. 8, §§ 20–25; 1 Comp. Laws 1929, § 2228 et seq., as amended).

18. COSTS—PUBLIC QUESTION—MUNICIPAL CORPORATIONS—PUBLIC FUNDS—DUES TO MUNICIPAL LEAGUE.

In suit to determine right of city to use public funds for payment of dues to nonprofit corporation, a municipal league, which engages in presentation of information and arguments to legislature, no costs are allowed as the case involves matters of public interest.

Appeal from Kalamazoo; Pugsley (Earl C.), J., presiding. Submitted October 10, 1946. (Docket No. 54, Calendar No. 43,464.) Rehearing denied March 3, 1947.

Bill by Charles B. Hays against City of Kalamazoo and others to restrain the city from including amount of dues in Michigan Municipal League in the annual budget. Michigan Municipal League intervened as a party defendant. Decree restraining the League from certain activities. Plaintiff appeals. Defendants and intervenor cross appeal. Reversed and bill dismissed.

*James B. Stanley,* for plaintiff.

*Richard H. Paulson* (*Sweet, Paulson & Laing,* of counsel), for defendants.

*Schaberg & Schaberg* (*John W. Lederle,* of counsel), for intervenor.

*Amici Curiae: William E. Dowling,* Corporation Counsel, and *John H. Witherspoon,* Assistant Corporation Counsel, for City of Detroit, *Charles H. Menmuir,* City Attorney, for City of Traverse City, and *Orph C. Holmes,* City Attorney, for City of Ferndale.

CARR, C. J. Plaintiff, a taxpayer of the city of Kalamazoo, brought suit in the circuit court against said city, its mayor and its city commissioners, for the purpose of obtaining equitable relief. The bill of complaint, filed November 25, 1944, alleged that for a period of 10 years and upwards past, defendant city had annually contributed to the Michigan Municipal League public funds derived from taxes and assessments, that the city manager, in preparing a budget for the year 1945, had included therein for the purpose indicated the sum of approximately $500, and that in accordance with the action taken in prior years such item would be approved by the city commission. The bill further alleged that such proposed expenditure was not authorized under the Constitution, the statutes of the State, or the city charter. Plaintiff asked that the court declare such expenditure to be unauthorized, illegal, and void, and that defendants be enjoined from including the item referred to in the budget of the city for the year 1945, and from paying any money whatsoever to the municipal league. Defendants filed an answer to the bill of complaint, admitting annual payments to the Michigan Municipal League, and that the amount included for such purpose in the 1945 budget was slightly in excess of $500. The answer further alleged that such payments were made in consideration of services received, and denied that the city of Kalamazoo was without authority to make the expenditure in question.

The Michigan Municipal League filed a petition in the case, claiming an interest in the subject-matter of the litigation and seeking permission to intervene as a party defendant. Such permission was granted. Thereupon the intervenor filed its answer to the bill of complaint, setting forth specifically the nature and purposes of its organization

and the character of the services rendered by it to its various constituent members, including the city of Kalamazoo.

The present charter of the defendant city was adopted under the provisions of Act No. 279, Pub. Acts 1909, as amended, commonly referred to as the city home-rule act.* Section 3 of said act, in prescribing mandatory charter provisions, specifies in subsection (h) the requirement "for an annual appropriation of money for municipal purposes." The statute must be construed in connection with the home-rule provisions of the 1908 Constitution, particularly article 8, §§ 20 and 21. Said sections are as follows:

"Sec. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Sec. 21. Under such general laws the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

Article 8, § 23, as amended at the general election held November 7, 1944, provides:

"Subject to the provisions of this Constitution, any city or village may acquire, own and operate,

---

* 1 Comp. Laws 1929, § 2228 *et seq.*, as amended (Comp. Laws Supp. 1940, 1943, § 2231 *et seq.*, Stat. Ann. and Stat. Ann. 1944 Cum. Supp. § 5.2071 *et seq.*).

either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof; and may also sell and deliver, heat, power and light without its corporate limits to an amount not to exceed 25 per cent. of that furnished by it within the corporate limits, and may also sell and deliver water outside of its corporate limits in such amount as may be determined by the legislative body of the city or village; and may operate transportation lines without the municipality within such limits as may be prescribed by law: Provided, That the right to own or operate transportation facilities shall not extend to any city or village of less than 25,000 inhabitants.''

Attention is also called to article 8, § 25, which provides in part:

''No city or village shall have power to abridge the right of elective franchise, to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose.''

The Michigan Municipal League was organized in 1928 as a nonprofit corporation. It succeeded a voluntary association of cities and villages of the State, designated as the Michigan League of Municipalities, which functioned for approximately 30 years. At the end of the 1944 fiscal year the membership in the corporation consisted of 283 Michigan cities and villages. The articles set forth the purposes of the corporation as follows:

''The improvement of municipal government and administration through co-operative effort; and this purpose shall be advanced by the maintenance of a central bureau of information and research; by the holding of annual conventions, schools and short courses; by the publication of an official magazine; by the encouraging of legislation beneficial to the

municipalities of Michigan and the citizens thereof; by the rendering of such special and general services as may be deemed advisable; and by the fostering of municipal education and a greater civic conscious-ness among the citizens of the municipalities of Michigan.''

The general character of the services rendered by the Michigan Municipal League to its constituent members is set forth in paragraph 11 of its answer, which reads:

''That the Michigan Muncipal League· exists for the purpose of perpetuating and organizing an agency for the co-operation of Michigan cities in the practical study of matters pertaining to municipal government, and the establishment and maintenance of a central bureau of information for use in collec-tion, compilation and dissemination of statistics, reports and all kinds of information relative to municipal government; that this information and service, among other things, includes taxation prob-lems, utility regulation, construction and engineer-ing, garbage disposal, zoning, civil service, extension of city limits, streets, paving, housing, law enforce-ment and ordinances, public welfare, liquor control, research, labor problems, pension, compensation, directories, licensing, police and fire protection, legal assistance, transient merchants, floods, stream pollu-tion, accounting, purchasing, public health, parks and play-grounds, post-war planning, information on proposed legislation, drafting charters, and many other services which are essential to the efficient management of the different municipalities consti-tuting its membership.''

The expenses of the Michigan Municipal League in carrying on its activities are·paid in the main from fees assessed, on the basis of population, against the cities and villages making up the mem-bership. The Federal census of 1940 shows that in that year the city of Kalamazoo had a population

of 54,097. The amount assessed against it for the year 1945, was the sum of $517. The municipal league is governed by a board of directors, selected from municipal officials representing constituent members. A president, vice-presidents, and a secretary are selected in like manner.

After hearing the proofs of the parties the trial court came to the conclusion that the action of the defendant city in availing itself of the services of the municipal league was not illegal or unauthorized, except as to the legislative activities of the municipal league. Payment for such activities, other than compiling and sending out, to the cities and villages comprising the league, information pertaining to legislative matters, was held, in the opinion filed by the trial judge, to be unauthorized and improper. A decree was accordingly entered, denying the relief sought against the city and its officials, but enjoining the intervening defendant from:

"1. Advising and counselling individual members of the legislature and legislative committees of the legislature, either during or between legislative sessions, as to desirable or undesirable proposed and anticipated legislation, and

"2. Drafting legislation and expending money for such purpose, and

"3. Appearing before legislative committees for the purpose of influencing the actions and reports of said committees upon proposed legislation, and

"4. Approaching individual members, whether assembled collectively or alone and presenting arguments to such members in respect to pending or anticipated legislation, provided that this order and injunction shall not be construed as prohibiting said Michigan Municipal League from maintaining a legislative bureau or from continuing the publication and circulation of its legislative bulletins to its members, containing information for its constituent members as to any legislation proposed or pending

before the legislature of the State of Michigan and containing facts and statistics relative thereto affecting said legislation."

From the decree all parties have appealed. It is in substance the position of the plaintiff that he is entitled to injunctive relief in accordance with the prayer of the bill of complaint, on the ground that the city of Kalamazoo has no right to pay public funds to the Michigan Municipal League for any purpose. Defendants insist the city has the right to belong to the municipal league, to avail itself of the services furnished thereby, and to make compensation from public funds on the ground that such expenditure is for a proper city public purpose. It is further urged by defendants that the legislative activities of the municipal league are not unlawful or otherwise improper, and that payment of dues is not open to objection because of such activities in connection with other services of the municipal league to its members. Emphasis is placed on the fact that there is no claim that the municipal league, or any of its officers or agents, have resorted to improper methods in presenting arguments and information to legislative committees, or to members of the legislature, with reference to pending or anticipated legislation.

Plaintiff claims in his brief that the petition of the Michigan Municipal League for permission to intervene as a party defendant should not have been granted. The record does not disclose that objections to the order allowing intervention were presented to the trial judge, or that the question was raised at any time during the proceeding in the circuit court. In any event, we do not think that there was an abuse of discretion on the part of the trial court in granting the prayer of the petition. It appeared from such petition that the Michigan Mu-

nicipal League is financed solely by the funds received from constituent members, including the city of Kalamazoo, and that a judicial determination that such members may not lawfully appropriate money for the payment of dues to the municipal league would render it impossible for said league to continue with its activities. Sufficient interest to justify the order was shown by the petition. Leave to intervene was properly granted.

The claim of plaintiff that defendant city cannot lawfully pay public funds to the municipal league for membership dues rests on the theory that the pertinent constitutional, statutory, and charter provisions do not authorize such expenditure. Reliance is placed on article 8, § 25, above quoted, and also on article 10, § 12, of the State Constitution. The last cited section reads:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

Defendants do not contend that money may be raised by taxation for other than public purposes, nor that municipal funds so obtained may lawfully be expended for other than such purposes. As before stated, it is urged on behalf of defendants that the city may avail itself of the services of the municipal league and pay therefor, on the theory that the general welfare and public interests of the municipality are thereby served. The expression "public purpose" has been frequently discussed in judicial decisions and by text writers. It is difficult, if not impossible, to give to the expression a definite meaning that will be applicable under any and all circumstances. In 37 Am. Jur. p. 734, it is said:

"A public use changes with changing conditions of society, new appliances in the sciences, and other changes brought about by an increase in population

and by new modes of transportation and communication. The courts as a rule have attempted no judicial definition of a public as distinguished from a private purpose, but have left each case to be determined by its own peculiar circumstances. Generally, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within the municipal corporation, the sovereign powers of which are used to promote such public purpose. The phrase 'municipal purpose,' used in the broader sense, is generally accepted as meaning public or governmental purpose as distinguished from private. The modern trend of decision is to expand and liberally construe the term 'public use' in considering State and municipal activities sought to be brought within its meaning. The test of public use is not based upon the function or capacity in which or by which the use is furnished. The right of the public to receive and enjoy the benefit of the use determines whether the use is public or private.''

In support of his contention plaintiff relies on the decision of this Court in *Detroit Museum of Art* v. *Engel,* 187 Mich. 432. That case involved the constitutionality of an act of the legislature of the State, in terms authorizing the city to make an annual appropriation, not exceeding $20,000 in any one year, for the support of the Detroit Museum of Art. It was held that the act in question infringed the provisions of article 8, § 25, and article 10, § 12, of the State Constitution, above quoted. Prior decisions denying to municipalities the right to use public funds in aid of private industrial projects were cited with approval. On behalf of plaintiff it was urged that its operations were conducted for the purpose of benefiting the public and that the appropriation by the city, sought to be authorized by the

action of the legislature, was not within the inhibition of the constitutional provisions cited. However, plaintiff's operations, while conducted for the benefit of the general public, did not serve a city public purpose. The case did not involve the right of a municipality to avail itself of, and to pay for, information and services of benefit to the city in its governmental capacity. It may not be regarded, therefore, as controlling of the issue in the case at bar.

In *Mosier* v. *Wayne County Board of Auditors,* 295 Mich. 27, the board of supervisors of Wayne county undertook by resolution to appropriate public funds to employ a competent person to make a survey among the industrial and agricultural counties of the State, and to form committees in said counties which would create a State committee for the purpose of proposing a constitutional amendment on the subject of the apportionment of representation in the State legislature. It was held that the matter of such representation did not have such relation to the property and business of the county as to require a holding that the board of supervisors had acted within its constitutional and statutory powers. The object sought to be attained was not a county public purpose. As in *Detroit Museum of Art* v. *Engel, supra,* the question of the power to appropriate money, and expend such money, for services rendered to a municipality in the performance of its proper municipal functions was not in issue.

Defendants insist that the expenditure of public moneys that plaintiff seeks to prevent is for a city public purpose and as such authorized by the provisions of the Constitution above referred to, by the city home-rule act, and by the municipal charter. The provisions of the Constitution of 1908, with

reference to cities and villages, were designed to give such municipalities greater powers of self-government than they had previously had. The city home-rule act, above cited, was enacted with such thought in mind. It seems apparent, also, that the clause of the charter of the city of Kalamazoo, hereinbefore quoted, was intended to give to the city the full measure of powers contemplated by constitutional and statutory provisions.

In discussing the home-rule act this Court said in *Gallup* v. *City of Saginaw,* 170 Mich. 195:

"The new system is one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly:"

Likewise, in *Bowler* v. *Nagel,* 228 Mich. 434, 437 (37 A. L. R. 1154) it was said:

"When the legislature enacted the home-rule act, we must assume that it had in mind the provisions of the new Constitution and was seeking to comply with its provisions. Section 21, above quoted, authorized the enactment of a general law permitting the electors of the city 'to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State.' Subsection (r) of section 3307,* above quoted, delegated to the city the power to provide in its charter 'For a system of civil service,' and subsection (t) 'For the exercise of all municipal powers * * * in the administration of the municipal government,' and, generally, to adopt any provision which would 'advance the interests of the city, the good government and prosperity of the municipality and its inhabitants,' and 'to pass all laws and ordinances relating to its munic-

* 1 Comp. Laws 1915.—Reporter.

ipal concerns subject to the Constitution and general laws of this State.' Very broad power is here conferred. If we read the provisions of the Constitution and those of the statute together, as I think we should, it seems apparent that the legislature intended to and did confer upon cities the power to manage their own local affairs in their own way provided only that in so doing they should not contravene any constitutional or statutory provision.''

In *Village of Kingsford* v. *Cudlip*, 258 Mich. 144, the Court, after quoting article 8, §§ 20 and 21 of the State Constitution, said:

''The purpose of these and other provisions which follow undoubtedly was to secure to cities and villages a greater degree of home rule than they formerly possessed. The provision for a general law for their incorporation was intended to confer upon them almost exclusive rights in the conduct of their affairs, not in conflict with the Constitution or general laws applicable thereto.''

See, also, *City of Pontiac* v. *Ducharme*, 278 Mich. 474; *Conroy* v. *City of Battle Creek*, 314 Mich. 210.

In *Miller* v. *Michigan State Apple Comm.*, 296 Mich. 248, this Court upheld an act of the legislature imposing a tax on the privilege of marketing Michigan-grown apples. In discussing the question whether the act served a public purpose, the Court quoted from the opinion of Justice COOLEY in *People, ex rel. Detroit & H. R. Co., v. Township Board of Salem,* 20 Mich. 452, 475 (4 Am. Rep. 400), as follows:

'' 'I do not understand that the word *public,* when employed in reference to this power, is to be construed or applied in any narrow or illiberal sense, or in any sense which would preclude the legislature from taking broad views of State interest, necessity or policy, or from giving those views effect by means

of the public revenues. Necessity alone is not the test by which the limits of State authority in this direction are to be defined, but a wise statesmanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness and prosperity of the people.' "

Applying the general principle suggested by the language of Justice Cooley, in the light of the home-rule provisions of the Constitution and the city home-rule act, we think it must be said that the city of Kalamazoo had the right to join the Michigan Municipal League, to avail itself of the services rendered thereby, and to expend money out of public funds in payment therefor. The record fully justifies the conclusion that the welfare of the city was thereby served and, hence, that the purpose was a city public purpose.

In commenting on the character of the services received by the city, the trial court said:

"The record is replete with conclusive evidence that the league has for many years rendered many services valuable to its members, and which would have been both difficult and expensive, if not in many cases impossible to obtain from other authentic sources. This court is also of the opinion that services rendered by the league in the whole to its members have been received at a comparatively reasonable, if not nominal charge."

The statement quoted is fully supported by the facts in the case. The trial court was correct in denying to plaintiff injunctive relief, barring the city of Kalamazoo from participating in the benefits of the services performed by the municipal league. En-

joining the city in accordance with the prayer of the bill of complaint would, obviously, result in preventing it from availing itself of services well adapted to promote the efficiency of the functioning of the municipal government.

This brings us to a consideration of the effect of the legislative activities of the Michigan Municipal League on the right of its constituent members to contribute funds by way of annual dues in return for services rendered. On this phase of the case the trial court came to the conclusion that the municipal league "overstepped its legitimate function," in presenting to members of the legislature, including legislative committees, statistics, information and arguments with reference to the merits of pending, or anticipated, legislative measures. Accordingly, the decree enjoined the municipal league from engaging in such activities other than the maintenance of a legislative bureau and the dissemination of information among the constituent members of the league. Defendants and cross-appellants assert that the decree was erroneous in such respect, claiming that no law or rule of public policy is violated, or has been violated by the legislative activities of the municipal league, its officers and agents. On behalf of plaintiff it is argued in substance that activities of the character in question are not a proper municipal function and public funds may not be expended therefor. Decisions are cited in plaintiff's brief holding that a municipality may not use public funds for the purpose of securing the enactment or defeat of proposed legislative measures. Among the cases of this character are *Minot* v. *West Roxbury* (1873), 112 Mass. 1 (17 Am. Rep. 52); *Coolidge* v. *Brookline* (1874), 114 Mass. 592; *Westbrook* v. *Deering* (1874), 63 Me. 231. Attention is also called to other decisions of like import, many of them involving changes

in boundaries, or other questions not considered to be proper matters of municipal concern.

Defendants rely on the premise that the mere placing of information and legitimate arguments before public officials having power to act in a given instance is not repugnant to public policy. Attention is called to the decision of this Court in *Beal* v. *Polhemus,* 67 Mich. 130. Involved in that case was the validity of a contract under which plaintiffs' decedent went to the city of Washington, and placed before certain officials of the Federal government the merits of his building, in the city of Ann Arbor, as a location for the post office in said city. The claim was made that the agreement was repugnant to public policy and, therefore, void. In rejecting the contention it was said with reference to the acts of the decedent in carrying out his undertaking:

"It is not shown by the findings or the evidence in the case that he used any improper means to gain his point, or even that he influenced any senator or representative in congress, or any officer of the government, to interfere in his behalf. He went to Washington personally, and, while there, secured the location of the office where he wanted it; but there is not the slightest testimony that he used any undue means to accomplish his end. We cannot presume that he used his personal power, which is said to have been very great, in a corrupt or unseemly manner, or in violation of any public policy. For aught we know, he appeared, as any citizen might and has a right to do, before the proper office at Washington, and stated the merits of his claim so convincingly and conclusively that the location desired seemed to be the most proper and available one. Certainly, there could be nothing wrong in this."

See, also, *Reinhard* v. *Grand Rapids School Equipment Co.,* 211 Mich. 165.

In 17 C. J. S. p. 575, following a discussion suggesting different views on the subject, it was said:

"Many agreements are admittedly good. All persons whose interests may be affected by any public or private act of the legislature have an undoubted right to urge their claims and arguments, either in person or by counsel professing to act for them, before legislative committees, as well as in courts of justice. An agreement, express or implied, for professional services in drafting petitions to the legislative body, in collecting evidence, preparing arguments, and submitting them either orally or in writing to legislative committees or other proper authorities is valid and free from judicial criticism, and it is immaterial that the person rendering such services is not a member of the legal profession."

As before noted, plaintiff's argument, and the cases on which he relies, particularly the earlier decisions, go to the extent of denying to a municipality the right to expend public funds in connection with legislative matters. The trend of the more recent decisions on the subject is not in accord with such contention. In *Powell* v. *City and County of San Francisco,* 62 Cal. App. (2d) 291 (144 Pac. [2d] 617), the district court of appeals of the first district of California upheld the right of the municipalities concerned to pay the expenses of municipal representatives who went to the city of Washington for the purpose of obtaining the approval of congress for the continuance of certain utility operations by the city of San Francisco. As in the case at bar, there was no showing, and apparently no claim, that the services were not rendered in good faith, or that any improper methods were resorted to by the members of the delegation.

In the case of *In re Carrick,* 127 N. J. Law, 316 (22 Atl. [2d] 561), it appears that the legislature had under consideration measures to compromise taxes

owing by certain railroads operating within the State. The legislative body of Jersey City undertook to appropriate and expend money to present to the public information relating to the contemplated action. In denying an application for a writ of certiorari to review the municipal resolutions, it was said:

"The proposed legislation was thought to seriously affect the financial life of the city. Municipal officers have a broad discretion in promoting the welfare of their communities. This is not a case of private profit, as in *Loudenslager* v. *Atlantic City,* 80 N. J. Law, 658 (77 Atl. 1060); aff. 82 N. J. Law, 530 (81 Atl. 1134); *Zeller* v. *Guttenberg,* 81 N. J. Law, 305 (83 Atl. 466). In this case, a public question of local interest was before the legislature. The precise manner in which the local authority should present its views rests in the sound discretion of its officials. Courts cannot control the form of public expression."

Of similar import is *City Affairs Committee of Jersey City* v. *Board of Commissioners of Jersey City,* 132 N. J. Law, 552 (41 Atl. [2d] 798).

In *Galveston County* v. *Gresham* (Tex. Civ. App.), 220 S. W. 560, the court of civil appeals of Texas upheld an agreement between county authorities and an attorney for the rendition of services in connection with placing before congress the desirability of the construction of a sea wall within the county. It was held that the project was properly to be regarded as county business. In answer to the claim that the agreement contravened public policy in that it was a lobbying contract, the court referred to the conclusion reached by the lower court that there was no evidence to support such charge; and said:

"To say that the record justifies this conclusion is putting it mildly, when, by the uncontroverted testi-

mony, 'to represent the county as its attorney before the proper committee or committees of Congress in the matter of the sea wall' was carried out by the appellee's simply appearing publicly before the river and harbors committee of Congress, explaining and urging its approval of the protective improvement, and that with no attempt at, nor thought of using his personal influence with any member of Congress. Such is not this court's conception of what it takes to make a 'lobbying' contract."

The supreme court of Texas refused to issue a writ of error to review this decision.

A similar conclusion was reached by the supreme court of Iowa in *Kemble* v. *Weaver,* 200 Iowa, 1333 (206 N. W. 83). There a board of supervisors, acting on behalf of a public drainage district, employed attorneys to appear before the State legislature for the purpose of obtaining an appropriation to pay an assessment on State-owned lands. The agreement was upheld as against the contention that it violated a rule of public policy against lobbying contracts, the court pointing out that no improper influences were exerted on members of the legislature.

An interesting discussion of the question is found in *Meehan* v. *Parsons,* 271 Ill. 546 (111 N. E. 529). In that case the city of Cairo sent its mayor to Washington for the purpose of obtaining Federal aid, through congressional action, in the construction of levees. The right of the city to pay the expenses thus incurred was questioned. In sustaining the right to recover such expenses, it was said:

"The principal contention made and the one most strenuously argued by appellees is, that it is contrary to public policy for the city to reimburse Parsons for expenses incurred in securing the passage of the act appropriating $250,000 for repairing

and strengthening the levees at the city of Cairo. Appellees cite a number of authorities under the propositions, first, that 'an agreement for compensation contingent upon obtaining legislation is void;' and second, that 'a contract to promote the passing of laws and ordinances and paying expenses or compensation therefor is against public policy and cannot be enforced.' The first of these propositions is not applicable to the facts in this case, and the second proposition is not sustained by the authorities cited in support thereof. The cases cited by appellees do hold, and properly, that an agreement for compensation which is contingent upon obtaining certain legislation is void. No such situation is presented by the facts in this case. While appellants aver in their answer that Parsons attended upon the sessions of Congress in Washington at the instance of the city, it is nowhere alleged by appellees, or admitted by appellants, that Parsons was to receive any compensation contingent upon obtaining the desired legislation. On the contrary, it does definitely and clearly appear that Parsons is claiming only a portion of his proper, necessary and suitable expenses incurred in connection with the three trips he made to the city of Washington, and that he had no personal interest whatever in the outcome, and that personally he would neither be benefited nor damaged by any action which Congress might take in the matter. The courts have not gone so far as to hold that in no event and under no circumstances is it proper to interview and importune members of a legislative body to enact certain legislation in which the party importuning them may be interested. The interests of the city of Cairo would undoubtedly be affected by whatever action Congress should choose to take in reference to the appropriation for the building of its levees. Should Congress refuse to appropriate any sum whatever, the whole burden of building and maintaining its

levees would rest upon the city. That burden would be lightened by whatever appropriation Congress should see fit to make. The city therefore had the undoubted right to authorize its chief executive to appear before the various congressional committees and interview the members of Congress to urge upon them the claims of the city and to advance any legitimate argument in favor of the passage of an appropriation bill for the relief of the city in this respect. Having the undoubted right to intercede with the members of Congress and to appear before its committees through its authorized agent, it must follow that the city undoubtedly would have the right to pay the necessary and legitimate expenses of its agent in presenting its claims to the members of Congress.''

See, also, *County of Campbell* v. *Howard,* 133 Va. 19 (112 S. E. 876) ; *Denison* v. *Crawford County,* 48 Iowa, 211; *Davis* v. *Commonwealth,* 164 Mass. 241 (41 N. E. 292, 30 L. R. A. 743) ; *Crawford* v. *Imperial Irrigation District,* 200 Cal. 318 (253 Pac. 726) ; *West* v. *Coos Co.,* 115 Ore. 409 (237 Pac. 961, 40 A. L. R. 1362) ; *State, ex rel. Hunt,* v. *Okanogan Co.,* 153 Wash. 399 (280 Pac. 31, 67 A. L. R. 668).

In considering the question before us, we may properly take into account that under the State Constitution, art. 8, § 23, above quoted, municipalities of the State are authorized to own and operate certain public utilities. Pursuant to such provision and the city home-rule act, the city of Kalamazoo is invested with powers of a proprietary nature, which it is required to exercise for the use and benefit of its people. Legislation, pending or anticipated, affecting the performance of such functions, necessarily concerns the city. Obviously, private corporations engaged in the operation of public utilities of the character in question may present

their views to the members of the legislature, submitting facts and arguments legitimately tending to aid a proper determination of such questions on their merits. Such being the case, cities and villages should not be denied similar privileges. This necessarily implies the right to compensate from public funds for services rendered and expenses incurred on behalf of such municipalities, in activities of the character in question.

The trial court in his opinion suggested, and counsel for plaintiff contends before this Court, that a city may not properly be permitted to delegate the power to promote or oppose legislation at the expense of the city. It is also suggested that occasions may arise when the officers of the municipal league may take a position with reference to legislative matters at variance with the views and attitude of the city of Kalamazoo, or some other constituent member of the municipal league. The city, however, by joining the municipal league and accepting its services, does not thereby preclude itself from placing before members of the legislature such facts, information and arguments, as are considered expedient in the interest of proper action as to such matters. It may, in other words, do exactly what the municipal league, through its officers and agents, undertakes to do, namely, assist the members of the legislature in arriving at a proper understanding of the situation before it and the effects of the proposed legislative action. The possibility of the officers and agents of the municipal league taking a position at variance with that of the city in a particular instance is not a valid reason for denying to the constituent members of the municipal league the right to receive the benefits of the services available to them.

In view of the present day problems confronting cities and villages, we cannot say that the expendi-

ture of public funds for the purpose of giving to the legislature information with reference to the subject-matter of proposed or anticipated legislation affecting such problems, is against public policy. As before noted, no claim is made that the municipal league, or those acting in its behalf, have resorted to illegal, improper or otherwise reprehensible means. Its undertaking is to place before members of the legislature, including appropriate committees, views and information designed to aid deliberate and considered action, to the end that the interests of constituent municipalities may be properly protected, and the performance of the municipal functions contemplated by pertinent constitutional and statutory provisions may be aided, by appropriate and expedient legislation.

For the reasons stated, the decree of the trial court will be modified by striking therefrom the provisions enjoining the intervening defendant from engaging in the legislative activities in question. A decree will enter in this Court, denying the relief sought by plaintiff and dismissing the bill of complaint. The case involving matters of public interest, no costs are allowed.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.